786 P.2d 874 (1990)
In the Matter of the Workers' Compensation Claim of Gordon JACKSON, Appellant (Employee-Claimant),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector-Defendant).
No. 89-103.
Supreme Court of Wyoming.
February 6, 1990.
Richard H. Honaker (argued) and David A. Hampton of Honaker & Hampton, Rock Springs, for appellant.
Joseph B. Meyer, Atty. Gen., Ron Arnold and Robert A. Nicholas, Senior Asst. Attys. Gen. (argued), for appellee.
*875 Before CARDINE, C.J., and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.
CARDINE, Chief Justice.
This appeal concerns the propriety of a summary judgment issued by an administrative hearing officer in a worker's compensation case. The summary judgment denying appellant Gordon Jackson's application for modification was, upon Jackson's petition for review, affirmed by the district court. Because we find such summary adjudication fails to comport with the procedures statutorily mandated for worker's compensation cases and, therefore, exceeds the statutory authority of the office of independent hearing officers, we reverse the decision of the district court and remand to the administrative agency for a full hearing.

BACKGROUND
On December 30, 1980, Jackson slipped and twisted his neck while working for Stansbury Coal Company at a mine north of Reliance, Wyoming. He applied for and received temporary total disability compensation for approximately 21 months following the accident. Dr. Earl Plunkett, the first of many physicians to examine Jackson during that period, informed the Wyoming Worker's Compensation Division (Division) in July 1981 that he could not, at that time, determine whether Jackson would suffer any permanent disability from the accident. He noted, however, that Jackson's participation in physical therapy was greatly encumbered by continuing pain and recommended that he be treated by the University of Utah Pain Clinic. Jackson's employer encouraged those rehabilitative efforts and asked the Division to suspend any permanent disability determinations until treatment at the pain clinic was completed.
The treating and examining physicians at the pain clinic found that Jackson's condition was deteriorating due to the lack of a sustained exercise program and indicated that underlying psychological difficulties may have contributed to his inability to follow such a program. They suggested that his potential for recovery, and accordingly the accuracy of any prognosis regarding the extent of his permanent disability, depended largely on whether or not these psychological problems could be overcome. To that end, it was recommended that Jackson undergo examination by the Stress Management and Biofeedback Institute of Wyoming (Institute) in Cheyenne.
During June and July 1982, personnel at the Institute examined Jackson and concluded that his traumatic injury had developed into chronic pain syndrome. The severe pain in his neck and right shoulder and arm could not be alleviated even by strong narcotics, causing Jackson to experience continual stress and depression. As a result, he had become unwilling or unable to use his right arm. While the physicians at the Institute did not consider him, under those conditions, to be a good candidate for rehabilitation, they withheld opinion as to any permanent disability and strongly suggested Jackson receive psychological counselling.
After reviewing the Institute's report, Jackson's employer agreed to a program of counselling combined with the continued exercise therapy but concluded that Jackson's recovery had stabilized sufficiently to warrant the termination of temporary total disability compensation and to afford the opportunity to make a preliminary determination of his permanent disability. The Division ordered a disability evaluation and, on October 22, 1982, awarded Jackson compensation for permanent partial disability, rated at 10 percent physical impairment of the whole body. It is clear from the record that the Division did not consider that action to constitute a determination of whether Jackson was vocationally disabled.
In early 1985, Jackson sought to modify that permanent partial disability award to 54 percent of the whole body, based on an evaluation by orthopedic surgeon Dr. Ross McNaught. In two letters, dated July 29, 1983, and November 21, 1983, McNaught observed, as had the physicians who previously examined Jackson, that Jackson was at the time of examination completely unable *876 to engage in heavy work due to chronic pain, despite some prospect for improvement. Accordingly, McNaught avoided any prognosis relating to the vocational component of Jackson's disability and based his 54 percent impairment rating solely on the loss of mobility in his upper extremities. The Division granted Jackson a modification award on March 11, 1985.
More than two years later, between June and September 1987, Jackson contacted the Division, complaining that he had been unfairly denied benefits by the actions of both the Division and his former attorney. He claimed total vocational disability and announced his intent to seek further compensation. He was told, in response, that the Division had "never been advised that [Jackson was] 100% totally disabled from [his] injury only." On January 6, 1988, Jackson filed a claim for permanent total disability compensation, and the Division objected. The hearing officer set a contested case hearing in the matter for October 6, 1988. The Division moved for summary judgment on September 1, 1988.
In opposition to that motion, Jackson submitted two letters from Dr. McNaught, dated December 3, 1987, and September 16, 1988, concerning his prior and present evaluations of Jackson's condition. The letters outlined Jackson's history of conservative treatment and the worsening of his condition despite his efforts at rehabilitation through exercise and heat treatments. McNaught stated that Jackson now suffered a 60 percent physical impairment of the whole body and was 100 percent vocationally disabled. He explained that his earlier rating of Jackson's condition had been based solely on the loss of mobility suffered between Jackson's accident and the examination, and that, in deference to a pending assessment of his prospects for rehabilitation, no consideration had been given to Jackson's ultimate vocational disability. McNaught's "wait and see" attitude with respect to his earlier disability evaluation was consistent with the approach taken by both the University of Utah Pain Clinic and the Stress Management and Biofeedback Institute of Wyoming, and which had been implicitly approved by Jackson's employer and the Division. All prior diagnostic efforts concluded that, at the time of the examination, Jackson could not work. However, they also concluded that a final evaluation of his permanent vocational disability should await additional efforts at physical, psychological and vocational rehabilitation and a subsequent evaluation of the potential success of those efforts. The history of the employer's and the Division's acquiescence to such advice appears to reflect the good judgment that our worker's compensation scheme seeks to rehabilitate injured workers at least as much as it seeks to compensate.
The Division supported its summary judgment motion largely through the statements of Jackson's primary physician, Dr. Glen Sheppard, which indicated that, at least since the time of the 1985 permanent partial disability award, Jackson had always been totally disabled. The record suggests that the hearing officer considered the deposition testimony of Dr. Sheppard. While it did not, however, contain a copy of that deposition, it did contain a number of letters from the doctor. We have been afforded the opportunity to examine that deposition only due to its inclusion as an appendix to the Division's briefs. Although we make no determination as to whether such evidence served as a basis for the hearing officer's decision, we do observe that, had it been properly before him, he would have been forced to note that Sheppard was a general practitioner, not an orthopedist, and that he had only a passing familiarity with the manner in which disability ratings were made, never having made such a determination himself. The record clearly shows, however, that neither Sheppard, nor any physician other than McNaught, performed or purported to perform a disability evaluation on Jackson which served as the basis of a worker's compensation award.
The hearing officer concluded that Jackson had failed to establish the existence of any factual issue concerning the grounds necessary for a modification of his prior award, and granted summary judgment to *877 the Division.[1] On March 29, 1989, the district court affirmed.

DISCUSSION
When the Division objected to his application to modify the earlier disability award, Jackson became entitled to have the matter determined by the contested case procedures of the Wyoming Administrative Procedure Act (WAPA). W.S. XX-XX-XXX(b) (June 1987 Repl.) states in pertinent part:
"If either the division or the employer object to the right of the employee to receive compensation, as to the amount of compensation or to amounts or procedures claimed for medical and health care, or at the request of the employee, the case shall be immediately referred to a hearing examiner who shall set the case for hearing at the earliest opportunity. The case shall be determined by a hearing examiner following the contested case procedures of the Wyoming Administrative Procedure Act."
We have frequently explained that a basic purpose of the WAPA is to assure that controverted issues underlying contested cases will be fully developed before agency fact finders. A record of material and substantial evidence must be created so that a reviewing court can determine whether such factual development occurred or whether, instead, the agency's actions were based on unwarranted or undeclared assumptions. Board of County Comm'rs v. Teton County Youth Services, Inc., 652 P.2d 400, 413-14 (Wyo. 1982); Glenn v. Board of County Comm'rs, 440 P.2d 1, 3 (Wyo. 1968). In the service of that legislative purpose, WAPA provides Jackson a number of important procedural rights. W.S. 16-3-107 provides in part:
"(a) In any contested case, all parties shall be afforded an opportunity for hearing * * *.
* * * * * *
"(c)(j) Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved."
Those rights gain more specific substance from the provisions of W.S. 16-3-108 which state:
"(a) * * * Subject to these requirements [concerning admissibility of evidence] and agency rule if the interests of the parties will not be prejudiced substantially testimony may be received in written form subject to the right of cross-examination as provided in subsection (c) of this section.
* * * * * *
"(c) A party may conduct cross-examinations required for a full and true disclosure of the facts and a party is entitled to confront all opposing witnesses." (emphasis added)
In addition, W.S. 16-3-110 mandates:
"A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings."
It is clear that, consistent with the purposes of the WAPA, these provisions were designed by the legislature to serve two related functions: to promote the full and fair development of factual issues and to permit a court, reviewing such development, to determine the reasonableness of agency action.
The hearing Jackson received did not permit him to fully and fairly develop facts material to the hearing officer's decision. In particular, he was deprived of the *878 opportunity to respond and present evidence and argument on what proved to be the most crucial issue in this case, and he was denied the opportunity to cross-examine Dr. Sheppard on that same issue. It is evident from the summary judgment proceedings that the hearing officer accorded great weight to Sheppard's declaration that Jackson had been "totally disabled" at the time of his earlier permanent partial disability award. Even a cursory examination of the record, however, suggests that few, if any, of the physicians involved with Jackson used the term "totally disabled" with its legal definition in mind. The usage of the term was, therefore, ambiguous and susceptible to more than one interpretation. Nevertheless, Jackson was deprived of an opportunity to explore what Sheppard meant by the term, whether Sheppard was purporting to have conducted the type of disability determination required by statute, and whether Sheppard was even qualified to make such a determination. By granting summary judgment, Jackson was denied the ability to fully develop facts material to the disposition of his case. This, the hearing officer may not do.
We have held it essential to surviving judicial review that the record of a contested agency action contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions. Larsen v. Oil and Gas Conservation Comm'n, 569 P.2d 87, 90-91 (Wyo. 1977); Powell v. Board of Trustees, Crook County School District No. 1, 550 P.2d 1112, 1120 (Wyo. 1976). Similarly, we have held that a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision. Absent such information, the agency decision must be set aside as arbitrary. Western Radio Communications, Inc. v. Two-Way Radio Service, Inc., 718 P.2d 15, 20 (Wyo. 1986); Monahan v. Board of Trustees, Elementary School District No. 9, 486 P.2d 235, 237 (Wyo. 1971). The need for such strict compliance with statutory provisions relating to the content of the agency record derives largely from a need to ascertain whether contested case hearings actually provide statutorily mandated procedural protections. To assure the due process protections inherent in the WAPA's statutory scheme will be given effect, this court requires strict compliance with those procedural provisions.
Foremost among the procedural protections of the WAPA is the requirement that contested cases be determined following trial-type proceedings. Foster's, Inc. v. City of Laramie, 718 P.2d 868, 873 (Wyo. 1986); Scarlett v. Town Council, 463 P.2d 26, 29 (Wyo. 1969). While administrative agencies are afforded considerable latitude in the procedures to be followed in such hearings, that flexibility does not go so far as to permit procedures which are contrary to statutory mandate or procedures which allow the agency to act without collecting the necessary facts. Cook v. Zoning Bd. of Adjustment, 776 P.2d 181, 185 (Wyo. 1989); Holding's Little America v. Board of County Comm'rs, 712 P.2d 331, 333 (Wyo. 1985); First National Bank of Thermopolis v. Bonham, 559 P.2d 42, 48-49 (Wyo. 1977).
Both general due process considerations of fairness and specific statutory restrictions directly limit the manner in which an agency may exercise its designated responsibilities. Cody Gas Company v. Public Service Comm'n, 748 P.2d 1144, 1148 (Wyo. 1988). Additional restrictions are imposed by the often stated principle that an agency enjoys only those powers which the legislature has expressly conferred and the corollary rule of construction that statutes under which an agency purports to exercise a doubtful power must be strictly construed against the exercise of that power. Hupp v. Employment Security Comm'n, 715 P.2d 223, 225 (Wyo. 1986); Tri-County Electric Ass'n, Inc. v. City of Gillette, 525 P.2d 3, 8-9 (Wyo. 1974).
In the present case, neither the worker's compensation statutes nor the WAPA expressly grants the hearing officer the power to determine cases by summary judgment. Nor do those enactments *879 authorize the adoption of procedural rules which directly contravene the general procedures mandated for contested cases by the WAPA or which permit the hearing officer to decide such cases without the collection of necessary facts.[2] In fact, the WAPA, on its face, requires agencies to provide full blown trial-type proceedings which include the right to cross-examination, the right to appear with counsel, and the right to a written decision separately stating the findings and conclusions of the trier of fact. Wyoming Bd. of Equalization v. State ex rel. Basin Electric Power Coop., 637 P.2d 248, 251 (Wyo. 1981). We have concluded in the past that such rights are "procedures required by law" and that their denial amounts to reversible error.[3]Buck Draw Field Area v. Wyoming Oil and Gas Conservation Comm'n, 721 P.2d 1070, 1076 (Wyo. 1986). Likewise, where procedures adopted for worker's compensation cases permitted the determination of a case without a statutorily mandated hearing, we have held the order denying benefits void. Herring v. Welltech, Inc., 660 P.2d 361, 366-67 (Wyo. 1983).
The sole exception to that rule will not benefit the Division in the present case. We have recognized that principles of due process do not demand a trial-type hearing with full WAPA-mandated procedures in cases where the agency is confronted with no disputed factual questions  where the agency's sole task is to determine questions of law or public policy. Walker v. Karpan, 726 P.2d 82, 83-87 (Wyo. 1986). Thus, we have held that a contested case hearing should be provided where the factual allegations on the face of a claimant's pleadings raise the proper statutory grounds for modification; conversely, we have held that no such hearing is required if those pleadings establish he is not entitled to relief as a matter of law. Herring v. Welltech, Inc., 715 P.2d 553, 556-57 (Wyo. 1986). The present case clearly goes beyond a determination that Jackson's pleadings were prima facie insufficient. No such determination was made, and it is unlikely that such a determination could be made under the appropriate standard of review. Once the hearing officer proceeded beyond the face of the pleadings to a consideration of factual matters, the present state of relevant legislation, and the opinions of this court interpreting that legislation, required the hearing officer to consider those matters only after full contested case proceedings.
After considering the cases and commentaries cited by the Division in support of a contrary position, we conclude that our holding in this case is not inconsistent with the views expressed therein. While a persuasive argument can be made recommending the broad use of summary judgment-type mechanisms in administrative adjudication, we note the following comments from 1 C. Koch, Administrative Law and Practice, §§ 5.77 and 5.79 (1985):
"Summary judgment adds efficiency to a quasi-judicial process as it does to the judicial process. Agency decisions are often controlled by questions of law or policy and can be made without an evidentiary hearing where the facts can be obtained otherwise or are not in dispute.

* * * * * *
"Some agencies have searched for techniques to reach decisions on individual *880 disputes by the notice and written comment procedures which have been effective in rulemaking. Where formal adjudication is required for such decisions, however, the agencies are not free to cut off the right to oral hearing." (emphasis added)
Similarly, after careful perusal of the extensive case law cited by the Division, we agree with the following evaluation:
"A long line of cases establishes the rule that even when a statute mandates an adjudicatory proceeding, neither that statute, nor due process, nor the APA requires an agency to conduct a meaningless evidentiary hearing when the facts are undisputed. But all these cases concern either statutes that do not clearly require a hearing before the agency action in question, statutes whose wording and legislative history condition a hearing on a preliminary showing of a disputed issue of fact, or at minimum agencies that have exercised their rulemaking powers to establish statutorily-permitted threshold prerequisites to a hearing. We refuse to extend their rule to this case, one where the agency summarily disregarded a controlling statute that clearly mandates a hearing." (citations omitted) United States v. Cheramie Bo-Truc # 5, Inc., 538 F.2d 696, 698-99 (5th Cir.1976).
In the present case, the worker's compensation statutes clearly mandate a WAPA contested case hearing, and none of the exceptions outlined in Cheramie are present.
The decision of the district court is reversed and the case remanded to the hearing officer for proceedings consistent with this opinion.
NOTES
[1] W.S. XX-XX-XXX (June 1987 Repl.) permits such modifications "on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud." Jackson appears to have argued from the facts set out above that his prior award was only preliminary insofar as his incapacity had been evaluated solely on the basis of his physical impairment, the extent of his vocational impairment having been, as yet, unknown. Thus, he argued alternatively that either, taking both components of disability into account, his incapacity has now increased, or it was a mistake to make a preliminary evaluation that failed to account for both components of his disability.
[2] It should be noted that under the worker's compensation statutes, as they existed prior to 1986, W.S. XX-XX-XXX (June 1983 Repl.) expressly made the Wyoming Rules of Civil Procedure applicable to the adjudication of such cases, unless some other provision of the act provided otherwise. Presumably, under such a scheme, summary judgments would be available unless expressly prohibited. However, the 1986 revision of those statutes effectively changed contested worker compensation cases from judicial to administrative proceedings. Hohnholt v. Basin Electric Power Co-op, 784 P.2d 233 (Wyo. 1989). No provision comparable to that contained in W.S. XX-XX-XXX was retained in the present statutory scheme. Accordingly, the trier of fact in compensation cases has been divested of a portion of the flexibility formerly afforded by the Rules of Civil Procedure and placed under the specific constraints of WAPA. See FMC v. Lane, 773 P.2d 163, 166-67 (Wyo. 1989).
[3] W.S. 16-3-114(c)(ii)(D) requires a reviewing court to "hold unlawful and set aside agency action * * * found to be * * * without observance of procedure required by law."