**ANR PRODUCTION COMPANY, a Delaware Corporation, Petitioner (Petitioner/Appellant),**

v.

**The WYOMING OIL AND GAS CONSERVATION COMMISSION, Respondent (Respondent/Appellee),**

**and**

**Woods Petroleum Corporation, Intervenor (Intervenor/Appellee).**

**ANR PRODUCTION COMPANY, a Delaware Corporation, Appellant (Petitioner/Appellant),**

v.

**The WYOMING OIL AND GAS CONSERVATION COMMISSION, Appellee (Respondent/Appellee),**

**and**

**Woods Petroleum Corporation, Appellee (Intervenor/Appellee/Respondent).**

Nos. 89–276, 89–277.

Supreme Court of Wyoming.

Oct. 31, 1990.

William T. Schwartz and J. Scott Burnworth of Schwartz, Bon, McCrary & Walker, Casper and Don C. Nelson, ANR Production Co., Houston, Tex., for ANR Production Co.

Joseph B. Meyer, Atty. Gen., Joe Scott, Senior Asst. Atty. Gen., Casper, for Wyoming Oil and Gas Conservation Com'n.

Craig Newman and Morris R. Massey of Brown & Drew, Casper, for Woods Petroleum Corp.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

ANR Production Company (ANR) appeals a district court order that certified to this court a petition by ANR for the district court to review a determination made by the Wyoming Oil and Gas Conservation Commission (Commission). ANR petitioned the district court to review the Commission's determination to shut in an ANR well to prevent waste and protect correlative rights. This court consolidated the appeal and petition for review.

We affirm.

## ISSUES

The issues raised by ANR with respect to the appeal from the district court are:

1. Did the district court err in certifying the Petition for Review prior to and without hearing on the Motion of ANR Production Company ("ANR") for leave to present additional evidence under W.R.A.P. 12.08?

2. Did the district court err in certifying the Petition for Review directly to the Supreme Court under W.R.A.P. 12.09 over the objection of ANR?

The issues raised by ANR with respect to the Commission's determination are:

1. Is the decision of the Commission arbitrary, capricious and contrary to law for failure to set forth the basis by which one set of experts' views [were] chosen over an opposing set of experts' views, and that the acceptance of Woods' evidence and the rejection of ANR's evidence, was made on a reasonable and proper basis?

2. Is the decision of the Commission arbitrary, capricious and contrary to law for failure to contain adequate findings of basic facts on material issues to support the ultimate facts and conclusions contained within the decision?

3. Is the decision of the Commission contrary to law and invalid since it does not constitute the actions of a disinterested quorum of the Commission?

## FACTS

In 1983, the Commission approved formation of the Powell Pressure Maintenance Unit (PPMU). PPMU produces oil and associated hydrocarbons from a subterranean level called the First Bench which underlies a portion of Converse County, Wyoming. Woods Petroleum (Woods) is the operator of the PPMU with a working interest in the unit. The PPMU is expected ultimately to produce sixteen million barrels of oil, 6.4 million barrels of natural gas liquids, forty-five billion cubic feet of natural gas and 23.5 billion cubic feet of make-up gas. Fifty feet below the PPMU is another subterranean level called the Second Bench which produces gas and hydrocarbons.

In August 1988, Woods applied for an emergency hearing by the Commission regarding problems which Woods alleged were caused by an ANR well. ANR owns the South Powell Federal No. 2–1 well (South Powell well) located beneath the PPMU at the Second Bench level. Woods claimed ANR had caused the Benches to exchange their fluids (communicate).

After hearing evidence from experts employed both by Woods and ANR, the Commission found ANR's fracture treatment of the South Powell well was causing commu-

* Chief Justice at time of oral argument.

nication because the fractures united the two Benches. On April 24, 1989, the Commission ordered the South Powell well shut in to protect the correlative rights of the First Bench producers and to prevent waste by protecting the secondary recovery operations. The Commission's report was signed by a Commissioner who had disqualified himself for a conflict of interest but who never voted on the determinations that affected ANR.

On May 19, 1989, ANR petitioned the district court for review of the Commission's determination. On June 5, Woods moved for permission to intervene, which was given on July 14. Four days later, Woods requested the district court certify ANR's petition for review to this court under W.R.A.P. 12.09.[1] The memorandum in support of that request advanced the rationale of appellate expediency and judicial efficiency pursuant to *Safety Medical Services, Inc. v. Employment Sec. Com'n of Wyoming*, 724 P.2d 468, 470 (Wyo.1986).

On August 4, ANR objected to the request for certification. ANR argued it intended to ask the district court to order the Commission to take additional evidence pursuant to W.R.A.P. 12.08. On that same day, Woods requested a hearing date be set on its request for certification. That hearing was set for September 1. On August 22, that hearing was rescheduled for October 25. On September 1, 1989, ANR retained new counsel.

On October 25, the day of the scheduled hearing, ANR filed the motion to present additional evidence. Without granting ANR's motion · to present additional evidence, the district court certified ANR's petition to this court for review, to which ANR objected and timely appealed.

## STANDARDS OF REVIEW AND APPLICATION

[T]he applicable standard of review depends upon whether the determination called into question in the appellate courts falls within one of three categories: [1] "review of the sufficiency of the evidence to meet the required burden of persuasion at the trial [fact-finding] level; [2] review of the exercise of discretion; and [3] plenary review of the choice, interpretation, [construction[2]], and application of the controlling legal precepts."

Byer, *Judge Aldisert's Contribution to Appellate Methodology: Emphasizing and Defining Standards of Review*, 48 U.Pitt.L.Rev. xvi, xx (preceding p. 963) (1987) (quoting Aldisert, *The Appellate Bar: Professional Responsibility and Professional Competence—A View from the Jaundiced Eye of One Appellate Judge*, 11 Cap.U.L.Rev. 445, 467 (1982)).

### A. Appeal from Certification with no W.R.A.P. 12.08 Hearing

The first issue advanced by ANR claims the district court erred in certifying the petition for review without an actual hearing on ANR's motion to present additional evidence under W.R.A.P. 12.08. ANR claims correctly that the appropriate standard of review for this issue requires an interpretation and construction of W.R.A.P. 12.08.

■ Although this court, and not the legislature, generates procedural rules to govern judicial review of agency determinations in Wyoming,[3] the principles generally used to interpret and construe constitutional and statutory provisions are applied to interpret and construe procedural rules created by this court. "We follow the rule

---

**1.** W.R.A.P. 12.09 provides in pertinent part:
  If after such review [by the district court and limited to the matters specified in W.S. § 16–3–114(c) ], the district court concludes the matter to be appropriate for determination by the Supreme Court, the district court may certify the case to the Supreme Court.

**2.** Interpretation and construction do different work. While "interpretation" "is concerned only with ascertaining the sense and meaning of

the subject-matter, [construction] may also be directed to explaining the legal effects and consequences of the instrument in question. Hence interpretation precedes construction, but stops at the written text. Interpretation and construction of the written instruments are not the same." Black's Law Dictionary 734 (5th ed. 1979).

**3.** *See* W.S. 16–3–114(a) and (b).

that, if the language of the [rule] is clear and unambiguous, we must accept and apply the plain meaning of that language." *State v. Denhardt*, 760 P.2d 988, 990 (Wyo. 1988).

W.R.A.P. 12.08 provides in pertinent part:

If, *before the date set for hearing*, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material, and there was good reason for failure to present it in the proceeding before the agency, the court in contested cases shall order that the additional evidence be taken before the agency upon conditions determined by the court.

(Emphasis added.)

The "plain meaning" principle of interpretation requires us to interpret the phrase *"before* the date set for hearing" in W.R.A.P. 12.08 to mean a motion for additional evidence must be presented *before* the hearing date.

■ By applying what appears to be the plain meaning of W.R.A.P. 12.08 to the record, this court is led to one conclusion. On August 22, a hearing was set for October 25. ANR could have moved to present additional evidence at any time from the 22nd of August until the end of the day on October 24th. But when ANR moved for leave to present additional evidence on the date of the hearing, it did not move *"before* the date set for hearing" as required by W.R.A.P. 12.08.

The untimely motion under W.R.A.P. 12.08 precludes ANR from relying on that rule on appeal. The contrary claim of ANR fails.

### B. *Certification of Petition for Review*

■ The second issue advanced by ANR claims the district court erred by certifying the petition for review directly to the Supreme Court under W.R.A.P. 12.09 over the objection of ANR. This issue asks that we review a determination which resulted from an exercise of discretion by the district court because the standard of review

for certification under W.R.A.P. 12.09 is "abuse of discretion." *See Wyoming State Engineer v. Willadsen*, 792 P.2d 1376 (Wyo.1990).

In *Willadsen*, 792 P.2d at 1378, we indicated "the district court's decision to certify a case [pursuant to W.R.A.P. 12.09] to this Court is discretional." A discretional decision by a district court will only be reversed upon a showing of abuse of discretion. "[A]buse of discretion has as its anchor point the query of 'whether the court could reasonably conclude as it did.' " *Oien v. State*, 797 P.2d 544, 549 (Wyo.1990) (quoting *Noetzelmann v. State*, 721 P.2d 579, 583 (Wyo.1986)). *See Seaton v. State of Wyo. Highway Com'n, Dist. No. 1*, 784 P.2d 197, 202 (Wyo.1989) and *Grabill v. State*, 621 P.2d 802, 814 (Wyo.1980).

Because we indicated in *Safety Medical Services, Inc.*, 724 P.2d at 471 that "appellate expediency and judicial efficiency" are factors for the decision by a district court to certify and because the district court based the rationale for certification on judicial efficiency, we hold the district court could reasonably conclude the certification of ANR's petition for review was proper. We therefore find no abuse of discretion.

### C. *Failure to Set Forth Reasons for Determination*

The third issue advanced by ANR claims the Commission's determination was arbitrary, capricious and contrary to law for failure to set forth the basis by which one set of experts' views were chosen over an opposing set of experts' views. Our initial task then is to locate the appropriate standard of review.

■ ANR formidably argues W.S. 16–3–114(c)(ii)(A) was violated according to our holding in *Mountain Fuel Supply Co. v. Public Service Com'n of Wyoming*, 662 P.2d 878, 887–88 (Wyo.1983). *Mountain Fuel Supply Co.* requires an agency determination "reflect the reasons why one expert's view [of the facts] was chosen over the other expert's view [of the facts]." *Id.* at 888. In other words, "an agency must cogently explain why it has exercised its discretion in a given manner, * * *." *Mo-*

*tor Vehicle Mfrs. Ass'n. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 48, 103 S.Ct. 2856, 2869, 77 L.Ed.2d 443 (1983). The *Mountain Fuel Supply Co.* requirement has been revisited and reinforced in subsequent holdings by this court.[4] *See Jackson v. State ex rel. Wyoming Workers' Compensation Div.*, 786 P.2d 874, 878 (Wyo.1990) and *FMC v. Lane*, 773 P.2d 163, 165 (Wyo.1989). Failure to comply with this requirement subjects an agency determination to "attack as being arbitrary, capricious, and contrary to law." *Mountain Fuel Supply Co.*, 662 P.2d at 888. This basic Wyoming rule defining requirement for adequate finding and conclusion was first explicitly stated in *Pan Am. Petroleum Corp. v. Wyoming Oil and Gas Conservation Commission*, 446 P.2d 550 (Wyo.1968).

This *Pan Am. Petroleum Corp., Mountain Fuel Supply Co.* and *Jackson* approach is similar to the emerging standard of review of federal agency determinations under *Motor Vehicle Mfrs. Ass'n.*, 463 U.S. at 43 n. 9, 103 S.Ct. at 2866 n. 9 and *Bowen v. American Hosp. Ass'n.*, 476 U.S. 610, 626–27, 106 S.Ct. 2101, 2112, 90 L.Ed.2d 584 (1986). "Our recognition of Congress' need to vest administrative agencies with ample power to assist in the difficult task of governing a vast and complex industrial Nation carries with it the correlative responsibility of the agency to *explain the rationale and factual basis for its decision.*" *Id.* at 627, 106 S.Ct. at 2112 (emphasis added).

■ Because this court must determine whether the record is sufficient to "permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions," *Jackson*, 786 P.2d at 878, we apply the requirements of *Mountain Fuel Supply Co.*, 662 P.2d at 887–88. Our analysis addresses whether the Commission's "order * * * reflect[s] the ways in which the testimony of the [ANR] expert[s] did not satisfy accepted criteria of the Commission, * * *, and in the same regard the basis for its conclusion that the testimony offered by [the Woods' experts] accords with acceptable criteria * * *." *Id.*, at 887–88.

While the Commission's determination accepts as true most of the testimony offered by the experts testifying for Woods over the testimony offered by the experts testifying for ANR, the record satisfies this court that the findings reflect the rationale for acceptance of the Woods testimony over that of ANR. In Finding of Fact 7, the Commission understood the primary issue is whether and to what extent there is communication between the Benches. In Finding of Fact 8, the Commission finds there is communication to a substantial extent. Looking to Findings of Fact 9–20, the decision shows why Finding of Fact 8 was resolved adverse to the position of ANR. Woods had argued there was communication because the second bench South Powell well behaved like a first bench well. ANR had argued the South Powell well behaved like a second bench well. The Commission agreed with Woods and the criteria needed to make this determination are reflected in Findings of Fact 11–13.[5]

---

**4.** *See* Shapiro and Levy, *Heightened Scrutiny of the Fourth Branch: Separation of Powers and the Requirement of Adequate Reasons for Agency Decisions*, 1987 Duke L.J. 387 (1987).

**5.** Findings of Fact 11, 12, and 13 provide:

　11. The South Powell No. 2–1 well "behaves" like a First Bench well[.] In other words, the pressure of the well, both FTP and SIBHP, is in the range of other First Bench wells, not other Second Bench wells. Production is in the range of First Bench wells, rather than Second Bench wells. Gas Oil Ratio behavior of the No. 2–1 well has been like that of a PPMU well, rather than Second Bench wells, Woods Exhibit Nos. 2 and 3.

　12. A pulse test and interference test, conducted in August and November 1988, in the First Bench yielded responses in the Second Bench in the South Powell No. 2–1 well, see Woods Exhibit 7, Docket No. 282–88 and Woods Exhibit No. 17. Sulfur hexafloride (SF6) was injected into the First Bench in a tracer test conducted in December 1988, through January 1989. SF6 then appeared in produced gas in the South Powell No. 2–1 well, as shown in Woods Exhibit Nos. 14 and 15.

　13. The area being drained by the South Powell No. 2–1 well, based on ususal [sic] engineering calculations, is far greater than what would be the case if it was producing

In Finding of Fact 11, the Commission found the Flowing Tube Pressure (FTP) and the Shut In Bottom Hole Pressure (SIBHP) of the South Powell well were in the range of First Bench wells, not Second Bench wells; the production was in the range of First Bench wells; and the gas oil ratio fluctuation of the South Powell well was like that of a First Bench well. This was, in part, the rationale for the finding that the South Powell well behaved like a First Bench well, which was the approach adopted throughout the Commission's determination. In doing so, the Commission articulated both the basic facts and their underlying rationale to establish objective criteria—permeability, pressure, reservoir pressure, production, area drained by a well, etc. We therefore find compliance by the Commission with the requirements articulated in *Mountain Fuel Supply Co.*

### D. *Are the Basic Facts Adequate to Support Ultimate Facts?*

The fourth issue advanced by ANR claims the Commission's determination was arbitrary, capricious and contrary to law for failure to contain adequate findings of basic facts on material issues to support the ultimate facts and conclusions. Initial review requires establishing the appropriate standard of review to determine whether the "basic facts" are adequate to support "ultimate facts" from which the administrative agency decision was made.

It is necessary to isolate the legal difference between "basic facts" and "ultimate facts" before determining what is adequate support for the particular "ultimate facts" being challenged. Three "concepts—basic facts, inferred facts, and ultimate facts—are fundamental to the anatomy of fact finding in the judicial process." *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3rd Cir.1981).

> *Basic facts* are the historical and narrative events elicited from the evidence presented at trial, admitted by stipulation, or not denied, where required, in responsive pleadings. Inferred factual conclusions are drawn from basic facts

only from the Second Bench. See Woods

and are permitted only when, and to the extent that, logic and human experience indicate a probability that certain consequences can and do follow from the basic facts. * * * No legal precept is implicated in drawing permissible factual inferences. But an *inferred fact* must be distinguished from a concept described in a term of art as an *"ultimate fact."* So conceived, *an ultimate fact is a mixture of fact and legal precept*[.]

*Id.* at 102 (emphasis added).

While ANR's fourth issue appears at first glance to require that "we separate the distinct factual and legal elements of the [Commission's] determination * * * and apply the appropriate standard to each component," *Universal Minerals, Inc.*, 669 F.2d at 103, the issue posed is a sufficiency of the evidence issue. *Pan Am. Petroleum Corp.*, 446 P.2d at 557. "When reviewing a claim that an agency determination is arbitrary, capricious, and an abuse of discretion because the findings of facts are not supported by substantial evidence, this court determines if there is 'such relevant evidence as reasonable minds would accept as adequate to support a conclusion.'" *Employment Sec. Com'n. of Wyoming v. Western Gas Processors, Ltd.*, 786 P.2d 866, 870 (Wyo.1990) (quoting *Southwest Wyoming Rehabilitation Center v. Emp. Sec. Com'n of Wyoming*, 781 P.2d 918, 921 (Wyo.1989)). As was made clear in discussing the prior issue, we necessarily found " 'such relevant evidence as reasonable minds would accept as adequate to support a conclusion' ", *Western Gas Processors, Ltd.*, 786 P.2d at 870, which basic facts were the result of acceptable criteria used by the Commission in making the decision. "Using judicial reliance upon and deference to agency expertise in its weighing of the evidence, a reviewing court will not disturb the agency determination unless it is 'clearly contrary to the overwhelming weight of the evidence on record.'" *Id.* at 871 (quoting *Southwest Rehabilitation Center*, 781 P.2d at 921). A sufficient factual basis to support the finding and the decision exists.

Exhibit Nos. 5 and 6.

### E. *Is the Determination Invalid by Lack of a Disinterested Quorum?*

The last issue advanced by ANR claims the Commission's determination is contrary to law and invalid because it did not constitute the actions of a disinterested quorum. This issue requires review to ascertain the choice and construction of the due process requirements of impartiality by fact-finders and W.S. 30–5–103(c).[6]

■ ANR is correct in contention that all administrative hearings should be conducted and decided in a fair and impartial manner. "Constitutional concepts of due process which require a fair hearing before an impartial tribunal have been held to apply to administrative agencies which adjudicate as well as to courts." *Ririe v. Board of Trustees of School Dist. No. One, Crook County, Wyo.,* 674 P.2d 214, 221 (Wyo. 1983) (*accord Gibson v. Berryhill,* 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973) and *Fallon v. Wyoming State Bd. of Medical Examiners,* 441 P.2d 322, 327, *reh'g denied* 443 P.2d 135 (Wyo.1968)). *See also* W.S. 16–3–112, which provides, in pertinent part, that "[t]he functions of all those presiding in contested cases shall be conducted in an *impartial* manner." (Emphasis added.) ANR also correctly argues W.S. 30–5–103(c) requires three members of the board be present for a hearing.

■ At the September 13, 1988 hearing, Acting Chairman Gary Glass (Glass) and Commission members Howard M. Schrinar (Schrinar), Eddie Moore (Moore), and Gene George (George) were present. At that hearing, Commissioner Moore stated:

> Mr. Chairman, just for the record, I would have to declare a conflict on this one. I can't vote on it because my family has an interest in it. So it's near to our hearts and our pocketbook, too. I already have my mind made up. I am not going to vote.

Moore abstained from voting while Schrinar, George and Glass voted to shut in the South Powell well for a month while a

noise test was conducted. On the December 13, 1988 hearing, again only Glass, Schrinar and George voted. In the final hearing on March 14, 1989, Moore again abstained and only George, Schrinar and Glass voted.

Three members of the Commission, other than Moore, were present at all hearings which satisfies W.S. 30–5–103(c). During the session, Moore never cast a vote, which satisfies a due process guarantee of impartiality by fact-finding. Admittedly, Moore signed the determination but that fact in itself carries no legal consequence when it occurred as a ministerial act for entry of the decision made by the actual participants.

Review of the record indicates proper compliance with due process and W.S. 30–5–103(c) to justify appeal rejection.

### CONCLUSION

For these reasons, the actions by the district court and the Commission are affirmed.

---

6. W.S. 30–5–103(c) provides, in pertinent part, that "[t]hree (3) members of the board shall constitute a quorum."