Shane D. NEAL, Appellant (Petitioner),

v.

CABALLO ROJO, INC., Appellee (Employer),

and

State of Wyoming, ex rel. Wyoming Workers' Compensation Division, Appellee (Objector–Defendant).

No. 94–77.

Supreme Court of Wyoming.

July 21, 1995.

R. Douglas Dumbrill and Thomas E. Lubnau II of Lubnau, Hand & Bailey, Gillette, for appellant.

Catherine W. Hansen of Holland & Hart, Cheyenne, for Caballo Rojo.

Joseph B. Meyer, Atty. Gen.; Kenneth E. Spurrier, Asst. Atty. Gen., Cheyenne; and M. Greg Carlson, Sp. Asst. Atty. Gen., Drew & Carlson, Gillette, for State, ex rel. Wyoming Workers' Compensation Division.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

THOMAS, Justice.

The primary question in this case is whether changes in the Wyoming Worker's Compensation Act, WYO.STAT. §§ 27–14–101 to –805 (1991 & Supp.1994), justify the entry of a summary judgment by a hearing examiner in a contested case. Collateral questions are raised with respect to the necessity of reporting injuries occurring over a period of time pursuant to WYO.STAT. § 27–14–502 and the propriety of a summary judgment in this case. We hold the statute has been changed to justify the availability of summary judgment in the administrative proceeding. Consistent with prior rulings, we hold an injury which develops over a period of time must be reported after it is diagnosed, and the entry of a summary judgment in this case was appropriate. We affirm the Findings of Fact, Conclusions of Law and Order Granting Summary Judgment and the Order Denying Benefits entered in the Office of Administrative Hearings by the hearing examiner.

In his Brief of Employee—Appellant Shane D. Neal, the employee (Neal) identifies these issues:

1. Is summary judgment available to bar hearing of the facts in this Worker's Compensation case?

2. When this worker's injury occurred over a substantial period of time and there

was no accident, can his case be dismissed for not timely filing an accident report?

In the Brief of Appellees (Employer & Objector), filed by Caballo Rojo, Inc. (Caballo) and the State of Wyoming (State), the issues are stated in this way:

A. Was the Hearing Officer Entitled to Utilize Summary Judgment Proceedings in the Administrative Forum Below?

B. Are There Any Disputed Issues of Material Fact Which Would Preclude Grant of Summary Judgment in Favor of Appellees?

C. Was the Hearing Officer's Conclusion of Law Granting Summary Judgment to Appellees in Accordance with the Law?

█ Before we consider the facts in this particular case, we must dispose of the question of whether a summary judgment is available in an administrative proceeding addressing issues under the Wyoming Worker's Compensation Act. Neal sought judicial review of the administrative proceeding, and the case then was certified to our court pursuant to WYO.R.APP.P. 12.09(b) upon a joint stipulation for certification by the parties. Neal contends that summary judgment is not available in administrative proceedings arising under the Wyoming Worker's Compensation Act, relying upon *State, ex rel. Wyoming Workers' Compensation Div. v. Halstead,* 795 P.2d 760 (Wyo.1990), and *Jackson v. State, ex rel. Workers' Compensation Div.,* 786 P.2d 874 (Wyo.1990). Caballo and the State agree *Jackson* and *Halstead* stand for the proposition that an administrative hearing officer has a limited power to invoke a summary judgment to dispose of the agency case. We noted in *Halstead,* however, that we were not considering the effect of the amendment to the statute now found in WYO. STAT. § 27–14–602(b) (1991) which provides, in pertinent part:

The case shall be determined by a hearing examiner in accordance with the law in effect at the time of the injury following the contested case procedures of the Wyoming Administrative Procedure Act and the Wyoming Rules of Civil Procedure as applicable under rules of the office of administrative hearings.

We recall the rationale of *Jackson:*

Additional restrictions [in addition to general due process considerations of fairness and specific statutory restrictions] are imposed by the often stated principle that an agency enjoys only those powers which **the legislature has expressly conferred** and the corollary rule of construction that statutes under which an agency purports to exercise a doubtful power must be strictly construed against the exercise of that power. *Hupp v. Employment Security Comm'n,* 715 P.2d 223, 225 (Wyo.1986); *Tri–County Electric Ass'n, Inc. v. City of Gillette,* 525 P.2d 3, 8–9 (Wyo.1974).

*Jackson,* 786 P.2d, at 878 (emphasis added). It appears that the legislature expressly has conferred authority to invoke the WYOMING RULES OF CIVIL PROCEDURE, and the RULES FOR CONTESTED CASE PRACTICE AND PROCEDURE BEFORE THE OFFICE OF ADMINISTRATIVE HEARINGS (1993) (hereinafter RULES FOR CONTESTED CASE PRACTICE) now provide in Chapter I, Section 6, entitled "General Course of Contested Case Proceedings:"

Unless otherwise provided by law, proceedings before the Office are governed by the contested case provisions of the Wyoming Administrative Procedure Act and, to the extent their application is not inconsistent with the particular administrative contested case proceeding, the **Wyoming Rules of Civil Procedure and other court rules may be looked to for guidance.** (Emphasis added.)

We hold that, to paraphrase *Jackson,* the legislature conferred authority upon the Office of Administrative Hearings to invoke the summary judgment rules of the WYOMING RULES OF CIVIL PROCEDURE. The RULES FOR CONTESTED CASE PRACTICE specifically provide that the Wyoming Rules of Civil Procedure are invoked for guidance. The desirability of resolving the case when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law * * * " (WYO.R.CIV.P. 56(c)) is as desirable in an administrative proceeding as it may be in a case before the court. In light of the amendment of the statute and the adoption of the WYOMING RULES OF CIVIL PROCEDURE by the RULES FOR CONTESTED CASE PRACTICE, a summary judgment can be utilized in a case before the Office of Administrative Hearings and should be granted when appropriate.

 We turn then to the substantive disposition of the case by the hearing examiner. Our examination of the record satisfies us there are no genuine issues of material fact in this case. Before he was employed at Caballo, Neal worked in heavy industry, in the oil fields, in construction, and as a truck driver. In 1984, he began working at Caballo as a heavy equipment operator. During eight years of employment, he operated haul trucks, blades, dozers, loaders, shovels, and water trucks. In addition, he worked for a while in blasting, which included working with a sledge hammer, dragging cable, and oiling the shovel.

The essence of Neal's claim of injury is that the seats in the vehicles and the machinery he operated for Caballo caused the injury to his back because they were worn, wobbled, leaned, and needed to be replaced. He contends he learned some equipment seats caused him more discomfort than others, and he notified Caballo of that fact. His position is that Caballo discouraged him from reporting the poor conditions of the seats.

In 1986, Neal began to experience frequent low-back pain which intensified during the work day. Over time, it extended to his mid-back and then to his neck and head. He began to develop shooting pains in his left leg and those symptoms finally extended into his right leg down to his toes. He consulted a physician for treatment in 1986. By 1987, he was often working ten-hour shifts with only a half hour for lunch and no other breaks. He utilized acetaminophen to relieve his pain and, in the evenings, he would use heating pads and hot tubs. As the condition progressed, he began to experience pain and cramps in the calves of his legs and began to have difficulty sleeping because of pain. In 1988, he consulted three physicians about his symptoms, and one physician discussed the potential for disc excision surgery to remedy his back pain.

In late 1988 or early 1989, he became an equipment operator trainer. His symptoms eased when he was in the classroom but, when he supervised the trainees on the job and sat on armrests and in back windows, his pain became intense. He finally told his supervisor he couldn't sit in the equipment and supervise the trainees, and Caballo then reassigned him to equipment operation. He went back to the ten-hour shifts and accrued 300 to 400 hours of overtime during the year. Neal claims much of the overtime was forced upon him because Caballo required employees to sign time cards refusing overtime work. He believed Caballo noted in permanent employee records those instances in which employees turned down overtime.

In 1990 through 1992, he was assigned to the blasting duties. The back pain diminished and, many days, he was totally free from pain. When he was shoveling, that pain would recur. The blasting duties ended, and Neal was reassigned to equipment operation. His back pain returned, and he "wrote up" the seats which he found to be as bad as ever.

Neal testified that, on March 29, 1992, he was knocked down while he and his crew were moving a shovel. He continued to work that day, but became stiff and developed pain. About one month later and, again two months later, he went to a chiropractor. He experienced no relief, but neither was there any increase in pain or stiffness. Later, he began to miss work because of back pain and, on September 6, 1992, he was advised by a physician in Salt Lake City that he should seek surgical relief. The surgery was accomplished on September 9, 1992.

Up until the time of his surgery, Neal had filed no report with his employer, and he did not file a report of occupational injury or disease in the district court until February 11, 1993. He had signed that document on February 2, 1993. Caballo concedes it knew, on February 10, 1993, Curnow intended to file a claim. After the claim was filed, the

Wyoming Worker's Compensation Division (Division) requested additional information which Neal provided. The Division then denied the claim because he had not reported the injury within the time required by Wyo. Stat. § 27–14–502(a). Neal objected to this Final Determination, and the matter was referred to the Office of Administrative Hearings for the contested case hearing.

Discovery was conducted in connection with the contested case proceeding. The following information is taken from Neal's deposition:

Q. Okay. So you believed, at least at that point in time, that your back pain was work related back in 1986?

A. Yes.

Q. And then in 1988, you went to see Dr. Tejano? Is it Dr. Tejano?

A. Yes.

Q. In Kansas?

A. Yes.

Q. And he discussed at that point this disc excision, the potential for the surgery with you then, didn't he?

A. He discussed that with me, yes.

Q. And at that time you had a series of tests done on your back in Kansas, correct?

A. Yes.

Q. And then this letter from your attorney and other things I've read reflect that in July of '92, you came to a point where you were having a lot of pain and finally decided to go off work and get some surgery, right?

A. Yes.

Q. And that was when you went and saw Dr. Thoen in August?

A. Dr. Lamb?

Q. And Dr. Thoen?

A. Right.

Q. I think Dr. Thoen assisted in the CT scan and other tests?

A. Right, he did an EMG and stuff like that.

Q. On your neck and lower back?

A. Right.

Q. And then it was at that point in time that Dr. Lamb talked with you about the disc excision and fusion surgery, correct?

A. Yes.

Q. And then you actually underwent that surgery on September 9th, '82 [sic]; is that right?

 * * * * * *

Q. But then it wasn't until February 2nd [sic], 1993, that you actually filed your claim with Workers' Comp?

A. Yes, I believe that's the date.

Recently, we held Wyo.Stat. § 27–14–502 requires reporting of an injury under these circumstances. *Curnow v. State of Wyoming, ex rel. Wyoming Workers' Compensation Div.*, No. 94–189, 1995 WL 429449, —— P.2d —— (Wyo. July 21, 1995). The pertinent language of the statute provides:

> As soon as is practical but not later than seventy-two (72) hours after the general nature of the injury became apparent, an injured employee shall report the occurrence and general nature of the accident to the employer and within ten (10) days after the injury became apparent, file the report in the office of the clerk of court of the county in which the accident occurred.

Wyo.Stat. § 27–14–502(a) (1991).

In *Curnow*, we cited to *Big Horn Coal Co. v. Wartensleben*, 502 P.2d 187 (Wyo.1972), for the proposition that the term "injury" in this statute alludes to a compensable injury. We reiterated our rule that the injury is compensable when it is properly diagnosed, citing *Little America Refining Co. v. Witt*, 854 P.2d 51 (Wyo.1993). In *Curnow*, No. 94–189, 1995 WL 429449, at *3, —— P.2d at ——, we said, "[w]e are satisfied Curnow knew he had suffered a compensable injury at least on July 6, 1993, after his visit with the orthopedic physician."

When we review Neal's testimony, he concedes he discussed the potential for surgery in 1988. He agrees that, in July of 1992, he decided to take time off from work and have the surgery. The following month, he discussed surgery with his physician, and the surgery was accomplished on September 9. It is clear Neal knew he had suffered a compensable injury, at least by the date of

the surgery and in fact when he decided, upon consultation with his physician, to have the surgery. Under *Curnow* and the cases cited there, it is probable Neal knew as early as 1988 he had suffered a compensable injury.

Neal argues, creatively, that in the instance of an injury occurring over a period of time, no reporting is required pursuant to Wyo.Stat. § 27–14–502 because there is no "accident" which is alluded to in the statute. His position is that he is only required to meet the one-year period for filing a claim set forth in Wyo.Stat. § 27–14–503. The cases which we have cited above are squarely contrary to Neal's position. In *Aanenson v. State, ex rel. Wyoming Worker's Compensation Div.*, 842 P.2d 1077, 1083 (Wyo.1992), we noted an important role for Wyo.Stat. § 27–14–503 in "providing certainty and a ripe opportunity to investigate an injury." The same role is served by Wyo.Stat. § 27–14–502, particularly with respect to the monitoring of medical treatment. *See Curnow.*

■ We harmonize these two statutes by holding that, even in the case of an injury which occurs over a period of time, the reporting requirements of Wyo.Stat. § 27–14–502 are as important as the filing requirements of Wyo.Stat. § 27–14–503, perhaps more so. It is apparent from the language of Wyo.Stat. § 27–14–502(c) (providing there is a presumption of denial of claim unless the injured workman rebuts it by evidence that the employer or the division was not prejudiced in investigating the accident and in monitoring medical treatment) that the legislature was relying upon the statute to afford the employer or the Division an opportunity to investigate and monitor medical treatment. In contrast, the primary thrust of Wyo.Stat. § 27–14–503 is that of the usual statute of limitations, to avoid stale claims.

After discovery was completed, Caballo and the State filed a Combined Joint Motion for Summary Judgment, in which they asserted that the failure of Neal to give timely notice of his claim and file his report of injury entitled them to judgment as a matter of law. The hearing examiner held a hearing on the motion and granted it. In the Findings of Fact, Conclusions of Law and Order

Granting Summary Judgment, the hearing examiner found Neal was aware of the general nature of his injuries in 1986, and he then believed they were related to his employment. The hearing examiner further found that, certainly no later than 1988, the general nature of his injuries was apparent to Neal. The hearing examiner also found there was no report of injury filed until February of 1993, and Neal continued with his employment until 1992.

■ In addressing the law, the hearing examiner concluded that, for purposes of Wyo.Stat. § 27–14–502, Neal was aware of the general nature of his injuries between 1986 and 1988 and believed those injuries were related to his employment. The examiner ruled Neal was required, but failed, to report his injuries to Caballo and to file a report of injury with the clerk of court within the time limits set forth in Wyo.Stat. § 27–14–502. The hearing examiner then invoked the presumption found in Wyo.Stat. § 27–14–502(c), which provides:

> Failure of the injured employee, any dependent or personal representative to report the accident to the employer and to file the report with the clerk of court in accordance with subsection (a) of this section is a presumption that the claim shall be denied. The presumption may be rebutted if the employee establishes by clear and convincing evidence a lack of prejudice to the employer or division in investigating the accident and in monitoring medical treatment.

The hearing examiner concluded the untimely reporting by Neal prejudiced both Caballo and the Division in monitoring his medical treatment and in their investigation of his injury. The hearing examiner further concluded Neal had the opportunity to rebut that presumption of prejudice through clear and convincing evidence, but he failed to do so. This resulted in the grant of summary judgment as a matter of law.

Caballo presented an affidavit from an employee relations/safety supervisor stating Caballo was prejudiced by its inability to reconstruct or investigate the variety and multitude of incidents which allegedly caused

Neal's injuries over a period of six years. He also stated Caballo was prejudiced because it was precluded from following policies for reporting work-related injuries and for processing workers' compensation claims. Those policies include requirements that any work-related accidents and injuries must be reported as soon as possible, but no later than the end of the shift in which they occurred; the directives relating to accident reporting be made available to employees in the employees' health and safety manual and the supervisor's guide for health and safety; and injured employees be accompanied to the hospital by a person in management. The affidavit reflects the purpose of these policies is to ensure Caballo is able to monitor medical treatment, choice of physicians, obtain an early diagnosis, and minimize the seriousness of the injury. The purpose also encompasses the opportunity to investigate the workplace, interview witnesses, and obtain essential on-site information surrounding an injury. In addition, these purposes include the monitoring of the workplace duties, and the adjustment of duties or work environment relating to the injury if that is necessary.

The Division also submitted an affidavit, through its claims unit supervisor, in which the Division declared it was prejudiced because it was precluded from properly monitoring, investigating, auditing, approving, denying, or otherwise dealing with Neal's claims. Specifically, upon the receipt of a report of occupational injury or disease, the Division, through physicians, nurses, medically-trained personnel and independent medical review, monitors claims for necessity and propriety of the treatment; monitors fees to determine if they are in accordance with the amount specified for procedures, services, and supplies; and verifies certification by health providers that the treatment rendered is for the injury which forms the basis of the claim. Neal presented no evidence addressing any of the facts articulated in these affidavits.

■ In light of *Curnow,* the hearing examiner could have granted summary judgment based upon the record and the conclusion that there was no genuine issue of material fact. The hearing examiner, however, properly invoked the statutory presumption.

We recognized, in a summary judgment context, the thrust of a presumption in *Anderson v. Schulz,* 527 P.2d 151, 152 (Wyo. 1974), where we alluded to the rule that structures a presumption of due care when the plaintiff has suffered amnesia:

> Both parties to a motion for summary judgment are entitled to any presumption applicable, *Caldwell v. Wilson Freight Forwarding Company,* D.C.Pa. [1971], 322 F.Supp. 43, 44; 6 Moore's Federal Practice, ¶ 56.15[3], p. 2343 (2d Ed.). For the same holding, see *Becker v. Safelite Glass Corporation,* D.C.Kan. [1965], 244 F.Supp. 625, 631, with an explanation of the reason for this rule as follows:
>
>> " * * * And the same reasons that warrant the use of presumptions at trial warrant their use in a summary judgment hearing. * * *"

Earlier, we had acknowledged the thrust of a presumption in the context of summary judgment proceedings. *Edmonds v. Valley Nat'l Bank of Arizona,* 518 P.2d 7 (Wyo.1974).

We hold, in considering the motion for summary judgment before it, the Office of Hearing Examiners properly invoked the presumption found in Wyo.Stat. § 27–14–502(c). In light of that presumption, Neal was required to present clear and convincing evidence that the employer and the Division experienced no prejudice in either investigating the accident or in monitoring medical treatment. Neal presented nothing.

We hold summary judgment is available in contested case hearings before the Office of Hearing Examiners. It should be invoked when, in the language of Wyo.R.Civ.P. 56(c), "[t]here is no genuine issue as to any material fact and * * * the moving party is entitled to judgment as matter of law." Caballo and the State were entitled to the benefit of the presumption set forth in Wyo.Stat. § 27–14–502(c), and Neal failed to offer any clear and convincing evidence that there was no prejudice. We reject the assertion that Wyo.Stat. § 27–14–502 is not applicable to injuries oc-

curring over a period of time based upon our cases in this area. The Office of Hearing Examiners appropriately and correctly granted the joint motion for summary judgment. The Findings of Fact, Conclusions of Law and Order Granting Summary Judgment and the Order Denying Benefits are affirmed.