573 A.2d 634

**George A. DUNN and Barbara Dunn, Appellants,**

**v.**

**ZONING HEARING BOARD OF WEST VINCENT TOWNSHIP, Chester County, Pennsylvania, and West Vincent Township, Appellees.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 1989.

Decided March 28, 1990.

Reargument Denied May 25, 1990.

Ronald M. Agulnick, Crawford, Wilson, Ryan & Agulnick, P.C., for appellant.

Glenn R. Diehl, W. Robert Landis Associates, P.C., with him, Allan B. Greenwood, for appellee.

Before DOYLE and PALLADINO, JJ., and BARBIERI, Senior Judge.

PALLADINO, Judge.

George and Barbara Dunn (Appellants) appeal from an order of the Court of Common Pleas of Chester County (trial court) affirming a decision of the Zoning Hearing Board of West Vincent Township (Board) holding that Appellants' kennel was a conditional use and limiting the number of hounds permitted at the kennel to twenty-eight.

On July 5, 1978, Appellants purchased an undeveloped tract of land in West Vincent Township (Township). Appellants subdivided the tract into three lots, selling two of the lots, and keeping the largest lot (premises) for themselves. The premises are located in the RC Rural–Conservation District under the West Vincent Township Zoning Ordinance (Ordinance). At the time the premises were purchased, the permitted uses in the RC district included single family detached dwellings, farming and other agricultural uses, and "accessory buildings and uses customarily incidental to the above uses." Ordinance § 403. Commercial kennels were a conditional use.

On July 22, 1978, Appellants were issued a building permit for a barn. Construction of the barn commenced in August, 1978, but was not under roof until November, 1978. Part of the barn is designed to house the pack of foxhounds which Appellants maintain, with an additional outside fenced area for dog runs. By the fall of 1978, twenty-eight dogs were kept at the premises.

On September 25, 1978, the Ordinance was amended by changing the definition of kennel, and making all kennels, not just commercial kennels, a conditional use in the RC

district. The revised definition of kennel, Ordinance § 202, reads as follows:

A structure or enclosed area housing more than 4 dogs or an establishment under the Pennsylvania Dog law operated either full or part-time or where the owner or operator receives remuneration for breeding, boarding, clipping, showing, training or sale of dogs.

On November 10, 1985, the Township Zoning Officer issued a Cease and Desist Order to Appellants for operating a kennel without first obtaining conditional use approval. The Appellants appealed to the Board, which after several hearings, found that Appellants' use of the property for twenty-eight hounds established a nonconforming use, but limited the kennel to that number, unless conditional use approval was obtained for each additional hound. Appellants appealed to the trial court, which affirmed the decision of the Board. Appellants appealed.

On appeal to this court, Appellants raise two issues: (1) whether the Board erred in finding that the kennel was a conditional use requiring approval rather than an accessory use; and (2) whether the Board erred in holding that the maintenance of the pack of hounds as a nonconforming use is limited to twenty-eight hounds.

In a zoning appeal where the trial court does not take any additional evidence, our scope of review is limited to a determination of whether the zoning hearing board has manifestly abused its discretion or committed an error of law. *Andreucci v. Zoning Hearing Board of Lower Milford Township*, 104 Pa.Commonwealth Ct. 223, 522 A.2d 107 (1987). A zoning hearing board abuses its discretion only if its findings are not supported by substantial evidence. *Id.*

The Ordinance clearly defines a kennel as an enclosure housing more than four dogs. The rules of statutory construction require that when general and specific sections of statutes conflict, the two shall be construed so as to give effect to both. 1 Pa.C.S. § 1933. The Board was correct in

concluding that the Appellants' kennel is a conditional use. To be an accessory use, the enclosure for the dogs would have to house four or less animals.

■■■ On the issue of limiting the number of dogs, under Ordinance § 202, the term "non-conforming" is defined as follows:

A building, or other structure, use, or lot, which by reason of design, size or use, does not conform with the requirements of the District, or Districts, in which it is located.

The Board found that the Appellants had a nonconforming kennel which was occupied by twenty-eight dogs. We find no error with this conclusion. However, any expansion of that use must be consistent with the policy of this state to restrict nonconforming uses closely and to construe strictly any provisions in zoning ordinances which provide for the continuance of nonconforming uses. *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539 (1962). The right to expansion is not unlimited, but may be subject to reasonable restrictions so that the expanded use is not detrimental to the public health, welfare and safety. *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969).

■■ The Township has established regulations on nonconforming buildings or uses. While permitting the continuation of such uses under section 1301.a of the Ordinance, extensions or changes of such uses are governed by section 1301.b which reads in pertinent part as follows:

*(2) All Other Uses:* The Zoning Hearing Board may authorize as a special exception the expansion up to fifty (50) percent of floor area of a nonconforming building or structure, ... or the manufacturing or processing capacity of such use, whether or not buildings are involved; provided that any yard, the dimensions of which are nonconforming, shall not be further reduced. Any extension or enlargement shall be immediately adjacent to the existing nonconforming use and shall conform to the area and height regulations of the district in which it is situated.

*(3) Changes:* When authorized as a special exception, a nonconforming use or a building or land may be changed to a nonconforming use of the same or more restricted classification, although structural changes or alterations are required. Whenever a nonconforming use of a building or land has changed to a use of a more restricted classification or to a conforming use, such use shall not thereafter be changed to a use of a less restricted classification.

It is clear that the Ordinance is written to control not only the area expansion of a nonconforming use, but the expansion of the intensity of use of a nonconforming use. While neither manufacturing nor processing are defined in the Ordinance, a process is commonly defined as "a natural phenomenon marked by gradual changes that lead toward a particular result" or a "series of actions or operations conducing to an end." Webster's Ninth New Collegiate Dictionary 937 (1984). As a result, even though the number of hounds has increased as a result of natural breeding processes, it may be controlled under the Ordinance, because such a process is an increase in the intensity of use.

However, in light of the above discussion on nonconforming uses, we conclude that the trial court erred by affirming the Board's holding that to increase the number of hounds beyond twenty-eight, the Appellants must receive approval for a conditional use. Under the Ordinance Appellants have a right to expand the nonconforming use, i.e. the number of hounds, by requesting a special exception. Because the Township has established a procedure to be followed in order to expand a nonconforming use, such a procedure must be followed. Accordingly, we affirm the trial court on the limitation on the number of hounds permitted, but reverse on the method to be employed to increase the number of hounds.

## ORDER

AND NOW, March 28, 1990, the order of the Court of Common Pleas of Chester County is affirmed as to the

conditional use status of the kennel and the limitation of the number of hounds permitted at the kennel, but is reversed as to the holding that conditional use approval is necessary to increase the number of hounds permitted at the kennel.

DOYLE, Judge, concurring and dissenting.

Respectfully I must dissent from that part of the majority opinion that finds that the trial judge erred when he concluded that the kennel was a preexisting nonconforming use limited to twenty-eight hounds, and I further dissent from the majority's holding that the Appellants are entitled to an expansion of their pack of foxhounds as a nonconforming use by a special exception under Section 1301.b of the Township's zoning ordinance.

First, the matter of a special exception was never, at any time, raised by the Appellants as an issue and was, therefore, waived. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Fawber v. Dauphin County Tax Claim Bureau*, 117 Pa. Commonwealth Ct. 521, 543 A.2d 1288, *petition for allowance of appeal denied*, 520 Pa. 609, 553 A.2d 970 (1988). It was not the subject of the Appellants' appeal to the zoning hearing board (Board) although Appellants did ask, *inter alia*, for a *variance*. Moreover, neither in their appeal to the common pleas court nor in their brief to this Court do the Appellants ever assert that they are entitled to a special exception. Quite the contrary, the Appellants, in support of their argument that the Board made an error by limiting the pack of hounds as a nonconforming use to twenty-eight hounds, argued forcefully that "it is the kennel which is the nonconforming use, not the number of dogs," (Appellants' brief at 11) and that "even as a nonconforming use, [meaning the barn], appellants should not be limited in the number of dogs, provided they do not expand the floor area." (Appellants' brief at 12.)

Quite simply, the Appellants never applied for a special exception, under Section 1301.b of the ordinance, which is

granted or denied by the Board [1] (as distinguished from a conditional use, which is granted or denied by the Township Board of Supervisors [2]), and it was not an issue the Board considered.

But, even had it been an issue, I would nonetheless have to agree with the Appellants, that Section 1301.b concerning an "extension" of a nonconforming use, in this case, applies to the physical property of the barn, not to the expansion of the pack of foxhounds. In this latter regard, in answer to the Appellants' argument before the trial court that the expansion of the kennel to include more than twenty-eight hounds was "authorized as a product of natural growth of a nonconforming use," because, "any expansion in number was certainly a natural expansion since it was done essentially through the birth of additional pups," Judge Smith cogently wrote:

This argument is based on a misinterpretation of the 'natural expansion' doctrine. Appellants appear to be suggesting that the vague adjective, 'natural,' refers to any activity that takes place pursuant to the primordial 'call of nature.' Although we concede that the call of nature may at times be compelling, the law does not in all instances recognize it as compulsory, least of all when nature is calling creatures whose activities are subject to the control of a responsible human being. Rather, the somewhat inappropriately named 'natural expansion' doctrine only applies to expansions which are 'absolutely

1. Under Section 202 of the zoning ordinance, Definition of Terms, a "Special Exception" is defined as follows:
   SPECIAL EXCEPTION: The granting of a modification of the provisions of this Ordinance as authorized in specific instances listed, and under the terms, procedures, and conditions prescribed herein. Special exceptions are administered by the Zoning Hearing Board.

2. Under Section 202 of the zoning ordinance, Definition of Terms, a "Conditional Use" is defined as follows:
   CONDITIONAL USE: A use which is not appropriate to a particular zoning district as a whole, but which may be suitable in certain localities within the district only when specific conditions and factors prescribed for such cases within this Ordinance are present. Conditional uses are allowed or denied by the Board of Supervisors after recommendations by the Planning Commission.

necessary' to accommodate changed circumstances. Unfortunately, the kind of 'necessity' warranting application of the doctrine does not appear to have ever been precisely defined, but our review of the case law concerning the doctrine reveals that without exception the doctrine has been applied only to cases involving growth of commercial uses, in order to accommodate 'natural' increases in business competition and demand for modernization. *See Ryan*, Pennsylvania Zoning Law and Practice, Section 7.4.1, and cases cited therein. We find no showing of an absolute necessity for additional hounds in this non commercial kennel. Slip op. at 3–4 (citations and footnote omitted).

I add only, that Section 1301.b of the ordinance, by also limiting the "extension" of a nonconforming use to "fifty (50) percent of ... the ... processing *capacity* of such use" (Emphasis added.) cannot, by any stretch of the imagination, cover the natural expansion of a pack of foxhounds, regardless of their fecundity. I would, therefore, affirm the judgment of the trial court.