598 A.2d 620

**Appeal of George S. GAMBONE and Jane Gambone from the Decision of the Zoning Hearing Board of the Borough of Conshohocken.**

**Appeal of George S. GAMBONE and Jane Gambone.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Oct. 21, 1991.

118

Blake E. Dunbar, Jr., for appellants.

David B. Beeghley, for appellee.

Before COLINS and BYER, JJ., and NARICK, Senior Judge.

COLINS, Judge.

George S. Gambone and Jane Gambone (appellants) appeal from an order of the Court of Common Pleas of Montgomery County (common pleas) affirming the decision of the Borough of Conshohocken Zoning Hearing Board (Board) that denied appellants' application to perform renovations on their property.

On June 6, 1989, appellants applied for a building permit to renovate a building that appellants operated as a tavern, a nonconforming use located in an "R-2" residential zone in the Borough of Conshohocken (Borough). The application proposed additional stucco work, installation of additional windows, and removal of part of the second floor for expansion of appellants' business.

After having obtained a building permit to complete these renovations, appellants' contractor began the renovation work, which continued until August 8, 1989, when a Borough zoning officer revoked the building permit. The reason for the revocation was the zoning officer's contention that appellants' renovations consisted of "structural alterations" that required a special exception pursuant to the zoning code. Appellants applied to the Board to contest the zoning officer's action or, alternatively, to obtain a special exception. At the same time, appellants sought to obtain a variance (by "entitlement") based on a vested rights theory.

At a hearing before the Board on October 17, 1989, appellants and the Borough zoning authority, respectively, presented opposing testimony from architects concerning appellants' alleged "structural alterations," and appellants' neighbors voiced complaints that the renovations engen-

dered traffic congestion, underage drinking, verbal obscenity, trash problems and automobile accidents.

On November 20, 1989, the Board denied appellants' application, making the following findings of fact:

3. The applicant proposes to eliminate one of the two apartment units on the second floor, open the ceiling area of portions of the first floor to create a 'cathedral ceiling' effect in the tavern, to replace windows and to restore stucco on the exterior of the building. The result of this will be that a nonconforming use of the premises as a tavern be extended to portions of the building previously used as nonconforming apartments.

4. The applicant challenges the determination of the Zoning Officer that a special exception is required for this work to be done based on his conclusion that the proposed renovations constitute 'structural alterations' within the meaning of the Conshohocken Zoning Ordinance.

5. The applicant seeks a special exception from the ordinance allowing the work to be performed in the event that the Board upholds the Zoning Officer's interpretation of the ordinance.

6. In the alternative, the applicant seeks a variance based on a theory of 'vested rights.'

.     .     .     .     .

8. On or about June 9, 1989, the Building Inspector issued a permit which, among other things, allowed the applicant to open the ceiling in the bar area to 'give cathedral look.'

9. There was no indication in the application for the building permit as to the extent of the actual work that was contemplated by the applicant.

10. The application for the building permit estimated the cost of the proposed alterations to be between $5,000 and $6,000.

11. As part of the work performed in the building the third floor and second floor ceiling was removed which

entailed, among other things, the cutting and removal of floor joists.

12. Some of the joists in the second floor ceilings were there for the purpose of windbracing.

13. Nothing in the building permit addresses or allows for the removal of joists on the second floor of the premises.

.    .    .    .    .

20. The granting of the applicant's requested relief would exacerbate the existing parking problem.

21. The Zoning Officer correctly determined that the applicant's proposed expansion would involve structural alterations thereby requiring the application for a special exception.

22. The applicant did not deal with the Borough of Conshohocken in good faith and with due diligence.

.    .    .    .    .

24. The applicant's proposal would be contrary to the public interest and would adversely affect the health, safety, and welfare of the community.

25. The applicant has established no unnecessary hardship which would entitle it to any variances from the terms of the zoning ordinance.

26. The applicant has not established the elements necessary to entitle it to a variance based on a theory of 'vested rights.'

This decision was appealed to common pleas which, on July 3, 1990, affirmed the Board. Appellants now bring this appeal.

The issue before this Court for consideration is whether common pleas erred or abused its discretion in affirming the Board's findings that: (1) appellants' renovations were structural in nature; (2) appellants failed to qualify for a special exception; (3) appellants were not entitled to a variance on a vested rights theory; and (4) appellants failed to establish the elements of unnecessary hardship. Because no additional evidence was submitted to

common pleas, our scope of review is limited to a determination of whether the Board committed a manifest abuse of discretion or an error of law in denying appellants' request for a variance. *Searles v. Zoning Hearing Board of the City of Easton*, 118 Pa.Commonwealth Ct. 453, 545 A.2d 476 (1988).

Appellants first contend that their renovations were not structural in nature and, therefore, the building permit initially obtained was sufficient without appellants' obtaining a special exception. Further, it is appellants' position that the evidence they presented to the Board, through testimony of an experienced architect and a land planner, proved the renovations' non-structural nature, and was far more credible than testimony to the contrary presented by the Borough's building inspector. Appellants maintain that, even assuming arguendo that the renovations are deemed structural, the testimony presented to the Board by the land planner on appellants' behalf unequivocally establishes appellants' eligibility for a special exception under Borough zoning ordinance requirements. It is appellants' contention that the renovations, once completed, would neither increase the tavern's width or area dimensions, nor add to off-street parking problems, as alleged by some of appellants' neighbors in testifying before the Board.

The Board counters this argument on the basis that appellants' renovations required cutting and removing joists and ceiling rafters, which clearly are structural changes falling within the ambit of the zoning code. The Board also emphasizes that appellants were unable to present any persuasive argument to warrant departing from the customary, stringent limitations applied by the Board in granting a special exception and, further, that appellants' proposed renovations would add to the neighborhood's existing parking congestion.

Appellants next contend that common pleas erred in affirming the Board's denial of appellants' claim for a variance by "entitlement" based on a theory of vested rights in having initially received the building permit. In

this regard, appellants aver that they met the criteria for such a variance and, as to the "good faith" issue, state that their building permit application presented the full scope of the renovations to "open ceiling inside the bar area to give cathedral look" and to "remove part of second floor." Appellants further contend that common pleas erred in affirming the Board's attributing bad faith to appellants because of the discrepancy between the estimated cost of the renovations (between $5,000.00 and $6,000.00) as indicated on appellants' building permit application, and the actual cost of the renovations (approximately $10,000.00).

In addition, appellants charge common pleas with error in upholding the Board's finding that the renovations would adversely affect the public health, safety and welfare and argues that no substantial evidence of such deleterious effect, other than neighbors' complaints, exists in the record. Finally, appellants aver that because their building permit was not revoked until their renovations were near completion, they proceeded, sustaining costs in the amount of $10,300.00. If their second floor renovation is disallowed, appellants argue they will incur additional expenses in having to restore the second floor to an apartment, which is clearly an unnecessary hardship that warrants their receiving a variance.

The Board rebuts the foregoing arguments and maintains that common pleas correctly upheld its decision denying appellants a variance by vested rights, because appellants did not meet the requirements for such a variance. The Board contends that appellants' building permit application was misleading, because it minimized the scope of the proposed renovations, totally omitting the "creation of an atrium or the removal of structural members in the second floor ceiling." Additionally, the Board points to the projected costs of renovation indicated on appellants' application, $5,000.00 to $6,000.00, when as of the hearing date, appellants had already expended $10,300.00 with the job not yet completed. As to appellants' argument of unnecessary hardship, the Board maintains that common pleas correctly

found that any such hardship was of appellants' own creation, as a result of the misleading nature of their building permit application.

It is not unusual that appellants are seeking to expand a nonconforming use, a practice that traditionally has been successfully invoked to meet the needs of commercial modernization. *Feldman v. Zoning Hearing Board of the City of Pittsburgh*, 89 Pa.Commonwealth Ct. 237, 492 A.2d 468 (1985). However, in determining whether common pleas erred in upholding the Board's finding that appellants' renovations did not comply with the applicable local ordinance provisions for expanding a nonconforming use, we refer to Section 186.—Extension of the Borough of Conshohocken Zoning Ordinance 8–1965, June 9, 1965, As Amended Through Ordinance 7–1987, September 9, 1987 (ordinance) that provides:

A. The nonconforming use of land or a nonconforming use which is not entirely enclosed within a building or structure shall not be extended.

B. Any lawful nonconforming use of a portion of the building or structure may be extended through the building or structure if no structure alterations are made therein, provided that such extensions may include structural alterations when authorized as a special exception.

C. Any lawful nonconforming building or structure or any building or structure of which a lawful nonconforming use is made may be extended upon the lot occupied by such building or structure and held in single and separate ownership on the effective date of this ordinance provided that such extension is authorized as a special exception.

D. The Zoning Hearing Board may allow a special exception as referred to in paragraphs B and C, above, subject to the following requirements in addition to the conditions for which the granting of special exceptions described elsewhere in this ordinance.

1. The area of such building or structure shall not increase more than 33⅓% of the area such building or structure existed on the date it first became a lawful

nonconforming building or structure in which a lawful nonconforming use is made.

2. Any structural alterations, extensions or additions shall conform with all height, area, width, yard, off-street parking, coverage and all review, recommendation and approval requirements for the district in which it is located.

■ The ordinance indicates that whether appellants need to obtain a special exception depends on whether their expansion of a nonconforming use involves structural alterations. We find that substantial evidence in the record supports the Board's findings that appellants' proposed expansion does involve structural alterations, even though not expressly stated in appellants' building permit, but only vaguely alluded to as "opening ceiling inside bar area to give cathedral look."

■ The Board, moreover, exercising its discretion as fact finder, found the testimony of the Borough's building inspector more credible than that of appellants' architect and land planner in unequivocally establishing the structural nature of appellants' renovations requiring: (1) creation of an atrium or "an opening between one or more floors of a building to allow any type of vision, to allow air, to allow any kind of access;" and (2) "removal of ceiling rafters (that served as 'windbracing for the exterior wall') on part of the second floor." This Court has consistently stated that:

> [I]t is the function of a zoning hearing board to weigh the evidence before it. *Lake Adventure, Inc. v. Dingman Township Zoning Hearing Board,* 64 Pa.Commonwealth Ct. 551, 440 A.2d 1284 (1982). The Board did not abuse its discretion by choosing to believe the opinion of one expert or witness over that offered by another. *Lower Allen Citizens Action Group, Inc. v. Lower Allen Township Zoning Hearing Board,* 93 Pa.Commonwealth Ct. 96, 500 A.2d 1253 (1985). The trial court, having determined that the Board committed neither an abuse of discretion nor error of law, is bound to affirm the decision

of the Board as long as the Board's findings and conclusions are supported by substantial evidence.

*Spargo v. Zoning Hearing Board,* 128 Pa.Commonwealth Ct. 193, 204, 563 A.2d 213, 218 (1989).

The record contains substantial evidence supporting the foregoing credibility determinations made by the Board and common pleas' affirmance of the Board in this regard. Our next determination is whether common pleas erred in supporting the Board's denial of appellants' request for a special exception. In *Drucker v. Zoning Hearing Board of the Borough of Wilkinsburg,* 124 Pa.Commonwealth Ct. 616, 556 A.2d 955 (1989), this Court reaffirmed the following:

> Specificity is the essential characteristic of operative special exception requirements in an ordinance. The Pennsylvania Supreme Court has long defined a special exception as one allowable where requirements and conditions *detailed* in the ordinance are found to exist. *Lukens v. Ridley Township Zoning Board,* 367 Pa. 608, 80 A.2d 765 (1951); *Devereux Foundation, Inc. Zoning Case,* 351 Pa. 478, 41 A.2d 744 (1945). (Emphasis in original.)

*Id.,* 124 Pa.Commonwealth Ct. at 620, 556 A.2d at 956 (quoting *Bray v. Zoning Board of Adjustment,* 48 Pa.Commonwealth Ct. 523, 527, 410 A.2d 909, 911 (1980)).

The foregoing analysis is particularly applicable in the present case in which Section 186(D)(1) and (2) of the ordinance provide specific requirements that appellants must meet in order for the Board to allow a special exception: (1) the expanded nonconforming use must not exceed 33⅓% in area; and (2) the proposed expansion must comply with all height, area width, yard, off-street parking, and "all review, recommendation and approval requirements for the district in which it is located."

Although the record contains evidence indicating that appellants' renovations would not result in area increases over 33⅓%, there is no evidence to show that appellants fully complied with all review, recommendation

and approval requirements for making structural renovations. Moreover, as the finder of fact points out, appellants essentially are attempting to replace a pre-existing nonconforming use, that of residential apartment units with another nonconforming use, that of the tavern, by expanding the tavern upwards and eliminating these apartments. In this regard, our Court has traditionally held that there is no constitutionally protected right to change from one nonconforming use to another and permission for change of use is limited by the terms of the controlling ordinance. *Altpa, Inc. v. North Huntingdon Township Zoning Hearing Board*, 67 Pa.Commonwealth Ct. 60, 445 A.2d 1358 (1982). In the instant matter, the ordinance allows for change of any "lawful nonconforming building, structure, land or use" to "another nonconforming building, structure, land or use" *of the same classification*, provided a special exception is granted by the Board. Clearly, in applying the ordinance to appellants' situation, a tavern cannot be considered "of the same class of use" as apartments, and the Board, therefore, correctly denied appellants a special exception.

Even viewing appellants' renovations as an expansion of a nonconforming use, rather than as replacement of an already existing nonconforming use by another, the Court has repeatedly stated, as in *Dunn v. Zoning Hearing Board*, 132 Pa.Commonwealth Ct. 489, 493, 573 A.2d 634, 636, *petition for allowance of appeal denied*, 527 Pa. 654, 593 A.2d 425 (1990), that an expansion of a nonconforming use:

> must be consistent with the policy of this state to restrict nonconforming uses closely and to construe strictly any provisions in zoning ordinances which provide for the continuance of nonconforming uses. *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539 (1962). The right to expansion is not unlimited, but may be subject to reasonable restrictions so that the expanded use is not detrimental to the public health, welfare and safety. *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969).

Examination of the record discloses substantial evidence in testimony given by appellants' neighbors that if the Board were to grant appellants a special exception to expand their nonconforming use, parking congestion, under-age drinking and disorderly conduct would significantly increase to the detriment of the neighborhood's health, safety and welfare. While these neighborhood objectors met their burden of persuasion and went forward with evidence on this issue, no evidence exists in the record to show that appellants attempted to rebut these allegations. Therefore, considering this factor, along with appellants' failure to meet other requirements, we agree with common pleas in upholding the Board's decision that appellants failed to prove they qualified for a special exception.

■ Turning now to the issue of whether common pleas erred in affirming the Board's finding that appellants were not entitled to a variance based on a vested rights theory, we, once again, find substantial evidence in the record to support the Board's decision. In order to qualify for a variance based on the vested rights doctrine, appellants must show they relied to their detriment on the Borough's allowing their renovations, as well as establish the following elements of the five-prong test, originally set forth in *Department of Environmental Resources v. Flynn,* 21 Pa.Commonwealth Ct. 264, 344 A.2d 720 (1975), adopted in *Petrosky v. Zoning Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979) and reaffirmed in *Highland Park Community Club v. Zoning Board of Adjustment of the City of Pittsburgh,* 509 Pa. 605, 506 A.2d 887 (1986):

(1) his due diligence in attempting to comply with the law;

(2) his good faith throughout the proceedings;

(3) the expenditure by him of substantial unrecoverable funds;

(4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit;

(5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit.

*Petrosky*, 485 Pa. at 507, 402 A.2d at 1388 (quoting *Department of Environmental Resources v. Flynn*, 21 Pa.Commonwealth Ct. at 272, 344 A.2d at 725).

■ As to the first and second criteria of the five-prong test, substantial evidence in the record shows that appellants' initial building permit application failed to indicate the extensiveness of the actual renovation work planned by appellants. Moreover, nothing in the building permit that appellants obtained allowed the removal of joists on the second floor of their premises. On the basis of this, the Board concluded that appellants "did not deal with the Borough of Conshohocken in good faith and with due diligence." The Board further concluded that appellants failed to satisfy the fifth criterion of the *Petrosky* test because of their failure to refute the considerable body of testimony from neighbors averring that appellants' proposed expansion was deleterious to the public welfare.

In view of the unarguably sketchy nature of appellants' application and their omission of detail in describing the proposed renovation work, as well as appellants' failure to rebut allegations regarding the adverse effect of their renovations on the neighborhood's health, safety and welfare, we agree with common pleas' upholding the Board's finding that appellants failed to satisfy the "due diligence" and "good faith" requirements, as well as the public interest requirement, for granting a vested rights variance.

■ Finally, we address appellants' claim that common pleas erred in affirming the Board's finding that appellants, in seeking a variance, failed to establish both that they would incur unnecessary hardship if their request for a variance were denied, and that the expansion would not be contrary to the public interest in the context of the requirements set forth in *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983).

Appellants aver that if they are not granted a variance, they will incur tremendous expense in restoring the second floor of their premises to a residential use. This type of hardship, however, is neither "unique" nor "peculiar" to appellants' property, as the *Valley View* standard would require, and is solely economic in nature. In the *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 60, 559 A.2d 896, 903–904 (1989), the Supreme Court stated:

> The hardship must be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Id.* Mere economic hardship will not of itself justify a grant of variance. *Id.; Appeal of Bilotta,* 440 Pa. 105, 270 A.2d 619 (1970). The rule is particularly applicable to a purchaser who knew how his property was zoned at the time of purchase. *Bilotta.* Self-inflicted economic hardship is not justification for grant of variance. *Id.*

Examination of the record discloses no evidence that would prove unnecessary hardship peculiar to appellants' property that would comply with the *Valley View* requirements. Appellants' expansion of their nonconforming use in reliance on the building permit they obtained was ill-placed, in view of the lack of detail as to the structural nature of their renovations indicated on their building permit application. The economic hardship resulting from appellants not being permitted to implement their expansion, if any exists, is clearly self-inflicted.

Based on the foregoing discussion, we find that the Board's findings and conclusions in this matter are supported by substantial evidence and that common pleas neither abused its discretion nor committed an error of law.

Accordingly, the order of common pleas is affirmed.

## ORDER

AND NOW, this 21st day of October, 1991, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is affirmed.