Patricia K. EBZERY, George Ewan, James F. Jackson, Theresa M. Jackson, Iris Madia, Kenneth Madia, Arland M. Wiberg, and Ruth A. Wiberg, Appellants (Petitioners),

v.

CITY OF SHERIDAN, Wyoming Board Of Adjustment, Bruce R. Elworthy and Ann Marshall, Appellee (Respondent).

No. 98–318.

Supreme Court of Wyoming.

June 25, 1999.

Rehearing Denied July 20, 1999.

Brian N. Beisher, Hart & Beisher, Sheridan, WY. Representing Appellants.

Stephen K. Gregersen, Sheridan City Attorney; Theodore E. Lauer, Director, Prosecution Assistance Program; and Carl S. McGuire III, Student Intern, Prosecution Assistance Program, Sheridan, WY., Representing Appellee City of Sheridan, Wyoming Board of Adjustment.

Bruce R. Elworthy, Elworthy & Marshall, Sheridan, WY., Representing Appellees Bruce R. Elworthy and Anne B. Marshall.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

Appellee Sheridan Board of Adjustment (the Board) granted a variance to Appellees, Bruce Elworthy and Anne Marshall (Owners), allowing the construction of a six-foot fence on two sides of Owners' property. Residents of Sheridan opposing the variance bring this appeal, claiming the Board's determination is not supported by substantial evidence. Finding no factual basis for the Board's conclusion that the variance granted is the minimum adjustment necessary to accomplish its purpose, we reverse and remand.

## ISSUES

Appellants present the following issues for review:

A. Whether the City of Sheridan Board of Adjustment's decision to grant the variance was supported by substantial evidence.

B. Whether the factual findings of the City of Sheridan Board of Adjustment permit a court to follow the agency's reasoning from the evidentiary facts to its eventual legal conclusion.

C. Whether the City of Sheridan Board of Adjustment complied with Wyoming Statute § 15-1-608(b)(ii) in granting the variance to Bruce Elworthy and Anne Marshall.

Appellee City of Sheridan phrases the issues as follows:

A. Did the Board of adjustment sufficiently set forth its Findings of Fact and Conclusions of Law when the Board of Adjustment issued an Order granting a variance to Appellees Bruce R. Elworthy and Anne B. Marshall?

B. Was the Board of Adjustment's decision to grant a variance to Appellees Bruce R. Elworthy and Anne B. Marshall based on substantial evidence when the Board of Adjustment received and reviewed relevant evidence and made their decision based on such evidence?

C. Was the variance granted by the Board of Adjustment the minimum adjustment necessary to accomplish the variance's purpose when the variance granted by the Board of Adjustment allowed Appellees Bruce R. Elworthy and Anne B. Marshall to construct a six-foot high fence on two sides of their property where Sheridan, Wyo., Code of Laws app. A. § 10(17) (1994) allowed a four-foot fence to be built?

Appellees Elworthy and Marshall present these issues:

1. Does the lack of an application and/or Order staying construction of the permitted improvement (the fence) render this matter moot?

2. Do the Applicants have a vested right to the fence irrespective of the legitimacy and/or propriety of the Board's actions?

## FACTS

Owners' property consists of a residence and yard comprising one full city block in Sheridan, Wyoming. At the time of purchase, the property was surrounded by a hedge over six feet tall and contained an in-ground swimming pool which had not been in use for quite some time. The property had fallen into a state of disrepair; the hedge had died in many spots, and the remainder had accumulated dead wood and trash. After beginning repairs, Owners learned that the hedge, as it then existed, would not meet

their liability insurance policy requirements to screen in the pool.

The Sheridan Code allows a resident to place six-foot fencing along the back of a property and also along the sides of properties not adjacent to a street. All other residential fences may not exceed four feet in height. A six-foot fence is allowed on the property if it meets the setback requirement of 25 feet from the curb. Owners wished to construct a six-foot fence around the entire perimeter of their property approximately 15 feet from the curb and, therefore, filed a request for a variance with the Sheridan Board of Adjustment. The basis for this request was two-fold: Owners claimed that the pool had to be fenced for public safety purposes, and that the fence had to be six feet tall to comply with their liability insurance policy requirements that the pool be screened in.

Owners' request was first considered at the July 9, 1998, Board meeting. After some discussion and the presentation of several letters from neighbors in opposition to the variance, the Board's vote resulted in a two-two tie because one member of the Board was absent from the meeting. Failing to pass by a majority vote, the variance was denied.

The Board reconsidered its decision at a special meeting on July 30, 1998. Between the first and second meetings, Owners submitted a detailed letter to the Board explaining why they believed the variance was appropriate. The letter was accompanied by exhibits, which included the relevant portion of Owners' insurance policy, several affidavits regarding the condition of the hedge, articles about safety issues relating to in-ground pools, and a diagram of the proposed fence. Neighbors opposing the variance again appeared in person and by letter. After limited discussion, it was determined that Owners did not need a variance for the back fence. When Owners agreed that the front fence need not be more than the allowed four-foot height, the request was modified to provide a variance for a six-foot fence on the two sides of the property adjacent to streets. In a three-two vote, the variance was granted and

was recorded on August 4, 1998, in the Sheridan County Courthouse.

Appellants filed a petition for review in the district court on August 28, 1998. The Board then issued a written Order dated September 10, 1998, with findings of fact and conclusions of law. On November 4, 1998, the district court certified the case to this Court pursuant to Rule 12 of the Wyoming Rules of Appellate Procedure.

## STANDARD OF REVIEW

As we recently stated in *Scott v. McTiernan*, 974 P.2d 966, 969 (Wyo.1999):

When we review cases which have been certified to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b), we apply the appellate standards which are applicable to the court of first instance. Wyo. Stat. Ann. § 16–3–114(c)(Michie 1997) governs judicial review of administrative actions.

In reviewing an agency's findings of fact, we determine whether substantial evidence supports the findings. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." We affirm an agency's conclusions of law when they are in accordance with law. When an agency has not invoked and properly applied the correct rule of law, we correct the agency's errors.

An administrative agency is charged with the duty of supporting its action with adequate findings of fact. Wyo. Stat. Ann. § 16–3–110 (Michie 1997). Section 16–3–110 states in pertinent part:

A final decision or order adverse to a party in a contested case shall be in writing or dictated into the record. The final decision shall include findings of fact and conclusions of law separately stated. Findings of fact[,] if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings.

In discharging its duty under § 16–3–110, the agency must "make findings of basic facts upon all of the material issues

in the proceeding and upon which its ultimate findings of fact or conclusions are based." This Court needs to know "why"an agency decided the way it did. When an agency does not make adequate findings of basic fact, we do not have a rational basis upon which to review its ultimate findings and conclusions. In cases where the findings do not adequately explain the rationale for the agency's decision, we remand the matter to the agency so that it can make additional findings. (Citations omitted.)

## DISCUSSION

### Final Order

As an initial matter, we address whether the Board's final order was contained in the Minutes of the July 30 meeting, as contended by Owners, or whether the final order is the written order issued over six weeks later. This determination is important not only because our review is initially focused on the final order, but also because the timely filing of an appeal from agency action is a jurisdictional matter. *Department of Revenue and Taxation v. Irvine*, 589 P.2d 1295, 1301 (Wyo.1979). If confusion exists as to whether a final order has been issued, it may result in costly litigation regarding the timeliness of an appeal or the foreclosure of judicial review. *See Rosenberger v. City of Casper Bd. of Adjustment*, 765 P.2d 367, 369 (Wyo.1988).

"A final administrative order is one ending the proceedings, leaving nothing further to be accomplished." *MGTC, Inc. v. Public Service Com'n of Wyoming*, 735 P.2d 103, 106 (Wyo.1987). Wyo. Stat. Ann. § 16–3–110 provides that the agency will render separately stated findings of fact and conclusions of law in writing, or dictate these findings and conclusions into the record. In this case, the minutes of the July 30 meeting indicate the Board unequivocally granted the variance, and at the close of the meeting adopted findings which had been dictated into the record. The Board did not inform the contestants that a written order would be issued at a later date or that the matter was subject to further consideration. In fact, the variance was recorded at the Sheridan County Courthouse on August 4, 1998. Thus, there was nothing further to accomplish after the July 30 meeting, and, consequently, the Board's determination on July 30 was a final appealable order.

### Substantial Evidence

The Board's decision to grant a variance is circumscribed by Wyo. Stat. Ann. § 15–1–608(ii)(B) (Michie 1997), which states:

(ii) ... No adjustment in the strict application of any provision of an ordinance may be granted unless:

(B) For reasons fully set forth in the board's findings, the circumstances or conditions are such that the strict application of the provisions of the ordinance would deprive the applicant of the reasonable use of the land or building, the granting of the adjustment is necessary for the reasonable use thereof and *the adjustment as granted is the minimum adjustment that will accomplish [that] purpose* [.]

(Emphasis added.)

Appellants maintain the record is devoid of evidence showing that a six-foot fence running the length of two sides of a city block is the minimum variance required in this situation. We, therefore, look to the factual findings on which the Board determined this issue. These facts must be based exclusively on the evidence in the record. Wyo. Stat. Ann. § 16–3–107(r) (Michie 1997).

When the Board voted to grant the variance, it "adopted the findings set forth in the motion." The motion to grant the variance stated as follows:

There are special circumstances or conditions peculiar to this piece of land in that this property is located on an entire city block so that all four sides face city streets, and this condition has not resulted from any act of Mr. Elworthy and/or Ms. Marshall;

That these circumstance (of the property covering an entire city block) are such that the strict application of the fence ordinance would deprive Mr. Elworthy and Ms. Marshall of the reasonable use of their land

because without the fence they could not obtain liability insurance, and that Mr. Elworthy has a right to reasonably fence his property;

That granting the requested variance would be in harmony with the general purpose and intent of the ordinance and would not be injurious to the neighbors.

While the Board found the reasonable use of Owners' land includes the ability to procure liability insurance, there is no finding in the July 30 minutes that the variance granted was the minimal alteration necessary to accomplish this purpose. Although the absence of this finding would normally require a remand for further findings, all parties to this appeal addressed the written Order of the Board. Therefore, we will consider that Order as further explanation of the Board's actions.

In its Order, the Board recites six findings of fact:

1. The property at 1001 Pioneer is located on an entire City block so that all four (4) sides of the property face the streets and this condition does not apply to other properties in the neighborhood.

2. The circumstance or condition described above does not result from any act of the owners of the property, subsequent to the adoption of Section 10, # 17, of Appendix A of the Sheridan Code.

3. The owners of the property can not obtain homeowner's liability insurance for their property because their homeowner liability insurance carrier will not insure their property without a minimum 6 foot fence around their swimming pool.

4. It is to the benefit of the public that a swimming pool be fenced for the safety of children or others who might wander into the pool area.

5. The pool is within 25 feet of the street. Placing a fence only around the perimeter of the pool would divide the owner's [sic] lot in such a way as to deprive them reasonable use of their property.

6. A 6 foot fence would not be necessary along Pioneer Street because the swimming pool is not visible from Pioneer Street.

Based on these findings, the Order's final conclusion of law states, "Granting a variance to allow a 72 inch high fence along Florence and Greystone Streets is necessary to allow the owners reasonable use of their property and is the minimum adjustment that would accomplish this purpose."

Appellants maintain that these findings of fact do nothing to provide a reasonable basis for the Board's conclusion that the variance granted to Owners is the minimal adjustment which would allow Owners to purchase liability insurance. We agree.

[I]t is essential to surviving judicial review that the record of a contested agency action contain such factual findings as would permit a court to follow the agency's reasoning from the evidentiary facts on record to its eventual legal conclusions. Similarly, we have held that a contested case hearing must provide, and the record of that proceeding must document, information sufficient to the making of a reasonable decision. Absent such information, the agency decision must be set aside as arbitrary.

*Heiss v. City of Casper Planning and Zoning Commission,* 941 P.2d 27, 30, (Wyo.1997) (citing *Jackson v. State ex rel. Workers' Compensation Division,* 786 P.2d 874, 877 (Wyo.1990)); *see also Mekss v. Wyoming Girls' School,* 813 P.2d 185, 201 (Wyo.1991).

Appellants contend that the minimum variance would allow Owners to fence the pool rather than the entire property. This suggestion was raised to the Board several times. The minutes of the July 9 meeting reflect the following discussion:

Fred Nelson asked if Mr. Elworthy has considered the option of just fencing off the pool area?

Mr. Elworthy said that doesn't solve the problem of the dying hedge. They have already had trouble with people driving and hitting the hedge.

Again, on July 30, another homeowner suggested that only the pool be fenced. This suggestion was addressed by the Board solely with the finding:

5. The pool is within 25 feet of the street. Placing a fence only around the perimeter

of the pool would divide the owner's [sic] lot in such a way as to deprive them reasonable use of their property.

In its brief, the Board explains this finding as follows:

> This option [of fencing only the pool] was untenable because under the Sheridan ordinances, since the property line is approximately ten feet from the curb, the setback requirement mandates that the fence would have to be at least thirty-five feet from the curb. The six-foot fence that Owners would build around the pool to qualify for homeowner liability insurance would have passed through the pool itself leaving the deepest end of the pool outside the six-foot fence."

This explanation, however, assumes that the **only** option available was to fence the entire perimeter of the property. It fails to account for a variance which would have allowed Owners to place a six-foot fence along the length of the pool near the street, thus, effectively avoiding the problem of the fence running through the pool. Instead, the variance granted by the Board allows a **maximum** adjustment, including the entire length of the block on the street adjacent to the pool, as well as the length of another block. The Board offered no alternative reasons to support the finding that fencing the perimeter of the pool would unreasonably divide the Owners' lot.

Appellees point to the letter submitted by Owners stating that if a fence were located anywhere other than the site of the hedge, it would result in the replacement of the entire sprinkler system. Again, this statement was made with the assumption that the only alternative to the requested variance was to place a six-foot fence meeting the 25–foot setback requirements around the perimeter of the property, not the pool. We also note that there is nothing in the Board's findings of fact or in the minutes of the meetings on July 9 and 30 which references this factor as a basis for the Board's decision.

The language in the statute requires Owners to prove a hardship exists, and the variance requested is the minimum variance which is sufficient to relieve the hardship proven by the applicant. *See* 83 Am.Jur.2d, *Zoning and Planning* § 957 (1993); 3 Kenneth H. Young, *Anderson's American Law of Zoning,* § 20.86 at 685–86 (4th ed.1996); *see also 39 Joy St. Condominium Association. v. Board of Appeal of Boston,* 426 Mass. 485, 688 N.E.2d 1363, 1366 (1998) *Clark County Board Of Commissioners v. Taggart Construction Company,* 96 Nev. 732, 615 P.2d 965, 967 (1980). The hardship recognized by the Board was the inability to buy liability insurance without a fence screening the pool. Because the record lacks documentation supporting a reasonable conclusion that the variance granted was the **minimum** adjustment necessary to achieve this purpose, we must conclude that the decision of the Board is arbitrary.

### Vested Rights Doctrine

■ Owners argue that the fence has been built in reliance on the variance, and, therefore, they have a vested right in the fence which renders this action moot. In support of their argument, Owners rely on our holding in *Snake River Venture v. Board of County Commissioners,* 616 P.2d 744 (Wyo. 1980). In *Snake River,* a developer requested a permit to construct a subdivision and commercial development in Teton County. *Id.* at 746. After initial approval of the project, the county board of commissioners amended the relevant zoning regulations to limit the permitted density. Thereafter, the commissioners gave final approval to the developer's project, even though the proposed density exceeded the amount allowed in the amended regulations. Subsequently, a trial court held that the final approval was unlawful. *Id.* at 747–49.

Upholding the finding of the trial court on appeal, we quoted with approval *Boise City v. Blaser,* 98 Idaho 789, 572 P.2d 892, 894 (1977):

> [W]hile a landowner who merely obtains a building permit is not protected against a future zoning change, he will be protected if, in reliance on the permit or on the existing zoning, he has made substantial expenditures or otherwise committed himself, to his substantial disadvantage, before the zoning is changed.

(Citation omitted.) "The fact that appellant-developer had not begun any actual construction on the project at the time of the trial court's decision [was] highly significant to our disposition of this appeal." *Snake River Venture*, 616 P.2d at 745. Owners contend that because they expended substantial amounts in reliance on the variance, this holding grants them a vested right to keep the six-foot fence.

■■■ We disagree. Generally, a permit issued under a mistake of fact confers no vested right or privilege and may be revoked at any time. *Bruno v. Zoning Board of Adjustment*, 664 A.2d 1077, 1080 (Pa. Cmwlth.1995). The concept of vested rights "is a judicial construct designed to provide individual relief in zoning cases involving egregious statutory or bureaucratic inequities." *Id.* (quoting *Highland Park Community Club v. Zoning Board of Adjustment*, 509 Pa. 605, 506 A.2d 887, 891 (1986)). Our decision in *Snake River* did not specifically address the precise conditions under which expenditures or commitments create a vested right. It has been recognized, however, that a property owner must act in good faith to acquire vested rights in a variance, and the reliance on the variance must be reasonable. *See Bruno*, 664 A.2d at 1080. Actions taken in reliance on a variance or permit while the time for appeal is pending are inherently unreasonable. *Columbus Board of Zoning Appeals v. Wetherald*, 605 N.E.2d 208, 210 (Ind.App.1992); *Appeal of Gambone*, 143 Pa. Cmwlth. 116, 598 A.2d 620, 626 (1991)(and cases cited therein); *Bowman v. City of York*, 240 Neb. 201, 482 N.W.2d 537, 546 (1992). Rather than protected activity, the commitment and expenditures under these circumstances are considered to be a calculated risk. *Wetherald, supra; Bowman, supra; Hussey v. Town of Barrington*, 135 N.H. 227, 604 A.2d 82, 85 (1992).

Here, Owners knew that the Board's decision was hotly contested and subject to appeal for 30 days after the time the Board rendered its final decision. Nonetheless, Owners state that before the time for appeal had passed, they executed a contract and paid a non-refundable deposit for materials, tore down substantial portions of the hedge, and paved a driveway, providing for the placement of fence posts. Owners further submit that they continued to substantially complete the construction after the appeal was filed despite the fact the petitioners had concurrently filed a motion for stay of the administrative order.

*Snake River* does not stand for the proposition that one who knows a variance is subject to appeal may render that appeal moot if only they act quickly. Owners' affirmative statements demonstrate that they were well aware of the risks associated with proceeding with the fence during the time allowed for appeal. The theory of vested rights does not apply here.

## CONCLUSION

The record fails to demonstrate substantial evidence on which to base a reasonable determination that the variance granted to Owners was the minimal adjustment necessary for the purpose of the variance. In addition, Owners' expenditures and commitments made during the time allowed for appeal of this matter did not constitute the reasonable and good faith reliance necessary to create a vested right in the fence as constructed. We, therefore, reverse and remand the Order of the Board.