959 P.2d 706 (1998)
In the MATTER OF the Worker's Compensation Claim of Carol ZIELINSKE, an Employee of Johnson County School District No. 1:
Carol ZIELINSKE, Appellant (Employee-claimant),
v.
JOHNSON COUNTY SCHOOL DISTRICT NO. 1,. Appellee (Employer-objector),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector-Defendant).
No. 96-309.
Supreme Court of Wyoming.
May 20, 1998.
*707 Rene Botten of Northern Wyoming Law Associates, Sheridan, for Appellant.
Timothy J. Kirven of Kirven and Kirven, P.C., Buffalo, for Appellee Johnson County School District No. 1.
William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for Appellee State ex rel. Wyoming Workers' Compensation Division.
Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.
TAYLOR, Chief Justice.
Appellant contests the hearing examiner's denial of worker's compensation benefits for occupational asthma. The hearing examiner found that appellant had not reported her claim within the statutory time period and failed to rebut the presumption that the claim be denied pursuant to Wyo. Stat. § 27-14-502 (Repl.1991). The hearing examiner also found that benefits were precluded because appellant had knowingly engaged in an injurious practice by continuing to smoke cigarettes against her doctor's recommendation. As the hearing examiner correctly applied the statutory mandates regarding appellant's belated report of her claim, we do not address the second basis for the hearing examiner's decision.
Affirmed.

I. ISSUES
Appellant, Carol Zielinske (Zielinske), states the following issues:
I. Whether Carol Zielinske complied with Wyo. Stat. § 27-14-502 in filing her claim.
II. Whether the Division or employer were prejudiced in their investigation or their ability to monitor medical treatment by * * * August 9, 1994, claimant's filing date.
III. Whether the Hearing Officer arbitrarily found that Carol Zielinske had engaged/persisted in the unsanitary or injurious practice of smoking against her doctor's orders as, in reality, no doctor had ordered Carol Zielinske to quit smoking and there was no medical evidence that Carol Zielinske's condition was affected by her smoking.
Appellee, Johnson County School District No. 1 (School District), identifies the following issues:
A. Did the Hearing Officer properly find that Appellant failed to comply with the W.S. § 27-14-502(a) requirement that a claimant file his/her report in the office of the clerk of court within 10 days after the injury became apparent?
B. Did the Hearing Officer properly find Appellant failed to rebut the presumption under W.S. § 27-14-502(c) that the claim should be denied?
C. Did the Hearing Officer properly find Appellant engaged in or persisted in an unsanitary or injurious practice which tended to imperil or retard her recovery?
Appellee, State ex rel. Wyoming Workers' Compensation Division (the Division), simply states the issue as:
A. Were the Hearing Examiner's findings and conclusions supported by substantial evidence and in accordance with law.

II. FACTS
Zielinske was hired as a custodian with the School District in June 1993 and assigned to work at the Meadowlark Elementary School and the administration office. Her duties required close contact with chemicals found in cleaning products used by the School District. Approximately one month after she began her job, Zielinske experienced sinus problems and headaches. Some time that summer, Zielinske approached her immediate supervisor, head custodian Dan Rhoades (Rhoades), and told him the floor wax stripper *708 smelled bad and was giving her headaches. Rhoades relayed this information to the school principal, Bob Tyser (Tyser). Tyser told Rhoades to monitor the situation and that he would check on procuring a respiratory mask.
The School District did not provide respiratory equipment. Neither did Zielinske register any further complaint until June 1994. In the meantime, Zielinske visited the Buffalo Medical Center in Buffalo, Wyoming on several occasions for sinus and respiratory problems. She was told her symptoms were likely caused by her presence in an elementary school environment where children often transmit germs.
Due to her continuing respiratory symptoms, Zielinske contacted the Billings Medical Clinic in Montana for further assessment of her condition. While making the appointment for her first visit, Zielinske talked with Dr. Schumann, who instructed her to bring "material safety data sheets" (MSDS sheets) which listed the chemical components of the cleaning products used in her job. Although Zielinske had not previously been aware of the MSDS sheets, upon inquiry she was directed to a book located in the custodian's room which contained the information. She then obtained further listings from the administration office.
Zielinske was examined by Dr. Schumann on June 7, 1994. Dr. Schumann's notes state: "Patient scheduled an appointment for evaluation because she feels that she is getting sick due to exposure to chemicals at work." During this visit, Dr. Schumann reviewed the MSDS sheets with Zielinske and concluded: "We'll first of all give her work restrictions indicating that she not work around waxes or wax strippers until we further investigate this." Dr. Schumann also "strongly recommended" Zielinske discontinue smoking and arranged an appointment for Zielinske with Dr. Merchant, a respiratory specialist.
Zielinske returned to work and provided Tyser with a work restriction sheet, signed by Dr. Schumann, stating she was not to work with any fresh wax or wax strippers. Tyser agreed to make sure she was not around the restricted substances until they knew more. He then instructed Rhoades to assign Zielinske only those duties which would comply with Dr. Schumann's recommendation. From that time on, the School District did not require Zielinske to come in contact with the offending chemicals.
On June 27, 1994, Zielinske was examined by Dr. Merchant. His notes from that visit state that the symptoms reported by Zielinske are "most suggestive of asthma," but that this preliminary diagnosis is "not confirmed." Dr. Merchant further noted: "It is likely the chemicals she is working with are acting as respiratory irritants and exacerbating her asthma. It is also very clear that her smoking is playing a significant role in this as well." Dr. Merchant then discussed the options from which the diagnosis of asthma could be confirmed. Zielinske chose to return to the workplace without restrictions to do "peak flow monitoring" which would give "specific information about exposures in the work place * * *." Zielinske was instructed to return in one month unless significant symptoms required earlier contact.
Zielinske testified that she informed both Tyser and Rhoades of her intention to re-expose herself to the formerly restricted cleaning products to verify the cause of her symptoms. Tyser and Rhoades, however, denied that Zielinske told them of the proposed testing. From June 29 through July 27, 1994, Zielinske monitored her breathing four times a day. During this time, Zielinske testified she continued to smoke and deliberately worked with fresh floor wax and wax strippers.
Tyser testified that his contemporaneous notes on July 27, 1994 reflected Zielinske told him her doctor informed her that exposure to chemicals at work was causing her bronchitis. The record indicates Zielinske had spoken with her doctors over the telephone during the time she had monitored her breathing, but her second appointment with Dr. Merchant did not occur until the next day, July 28, 1994. Dr. Merchant's notes state that on that date, Zielinske was informed that the diagnosis of asthma was confirmed, and that she "was advised to continue peak flow monitoring and advised that *709 this is a potentially fatal condition and to reenter the work place with caution."
Zielinske did not report this information to the School District, nor did she advise Tyser of another visit with Dr. Merchant on August 1, 1994. On August 4, 1994, after reviewing Dr. Merchant's notes, Dr. Schumann telephoned Zielinske at work to discuss Dr. Merchant's conclusions. Zielinske then informed Tyser, who was present in the office at the time of the call, that her doctor stated she could no longer work with cleaning chemicals.
Immediately following this disclosure, Tyser and Zielinske discussed her options. Tyser requested a list of the problematic cleaning products or chemicals in order to check on the availability of alternative products. The only response to this request was a faxed medical status report which simply stated Zielinske could not work with "floor wax or strippers or other chemical respiratory irritants."
Alternative job positions were discussed, but the only immediate vacancy was in the kitchen, again involving contact with cleaning products. Tyser informed Zielinske that there may be an aide position open in several weeks, and that she also had the option of resigning. Zielinske returned later that day and submitted her resignation.
On August 9, 1994, Zielinske completed a report of injury, identifying the date of her injury as June 7, 1994. The School District objected, and on September 19, 1994, the Division issued a final determination denying benefits. A contested case hearing was held on September 15, 1995. On August 30, 1996, the hearing examiner issued the order denying benefits, finding that Zielinske had not timely filed; she had failed to rebut by clear and convincing evidence the statutory presumption that her claim should be denied; and she had forfeited her benefits by engaging in unsanitary or injurious practice. Zielinske petitioned for review to the district court, and upon the motion of the parties, the case was certified for our review pursuant to W.R.A.P. 12.09(b).

III. STANDARD OF REVIEW
The dispositive issues in this case are whether the hearing examiner correctly determined that Zielinske untimely reported her injury; and, if so, whether she rebutted the presumption that her claim should, therefore, be denied. A duty to report an injury commences when the employee knows "that he has suffered an injury which can result in, or is likely to cause, a compensable disability * * *." Curnow v. State ex rel. Wyoming Workers' Compensation Div., 899 P.2d 875, 878 (Wyo.1995) (emphasis added). The time at which the employee gains this knowledge is a question of fact. Id. Likewise, whether a claimant has clearly and convincingly rebutted the presumption that the employer or the Division is prejudiced by late reporting is a factual determination. Id.
We defer to the hearing examiner's factual findings if they are supported by substantial evidence in light of the entire record. State ex rel. Wyoming Workers' Compensation Div. v. Harris, 931 P.2d 255, 258 (Wyo.1997); City of Casper v. Haines, 886 P.2d 585, 587 (Wyo.1994). Substantial evidence is relevant evidence which a reasonable mind would accept as sufficient to support the hearing examiner's conclusions. Harris, 931 P.2d at 258 (quoting Stuckey v. State ex rel. Wyoming Workers' Compensation Div., 890 P.2d 1097, 1099 (Wyo.1995)); State ex rel. Wyoming Workers' Compensation Div. v. Hollister, 794 P.2d 886, 891 (Wyo.1990) (quoting Hohnholt v. Basin Electric Power Co-op., 784 P.2d 233, 234 (Wyo. 1989)). We will not substitute our judgment for that of the agency and will examine only the evidence which favors the prevailing party while omitting consideration of any conflicting evidence. Wyoming Steel & Fab, Inc. v. Robles, 882 P.2d 873, 876 (Wyo.1994) (quoting Sinclair Trucking v. Bailey, 848 P.2d 1349, 1351 (Wyo.1993)).

IV. DISCUSSION
Wyo. Stat. § 27-14-502, which governed the timely reporting of Zielinske's work-related injury, provided, in relevant part:

*710 (a) As soon as is practical but not later than seventy-two (72) hours after the general nature of the injury became apparent, an injured employee shall report the occurrence and general nature of the accident to the employer and within ten (10) days after the injury became apparent, file the report in the office of the clerk of court of the county in which the accident occurred. * * *
* * *
(c) Failure of the injured employee * * * to report the accident to the employer and to file the report with the clerk of court in accordance with subsection (a) of this section is a presumption that the claim shall be denied. The presumption may be rebutted if the employee establishes by clear and convincing evidence a lack of prejudice to the employer or division in investigating the accident and in monitoring medical treatment.
We have held that an injury becomes compensable for purposes of Wyo. Stat. § 27-14-502 when it is properly diagnosed. Curnow, 899 P.2d at 877; Neal v. Caballo Rojo, Inc., 899 P.2d 56, 61 (Wyo.1995). Zielinske contends she timely reported her injury because her condition was not "properly diagnosed" until she received the final diagnosis on August 4, 1994. "[W]hen a correct diagnosis and prognosis of present or likely future disability is communicated to the claimant, the injury is discovered, it is compensable, and the statute of limitations begins to run." Haines, 886 P.2d at 589 (emphasis added). The facts in Curnow, which are very similar to the facts in this case, demonstrate that the words "properly diagnosed" do not necessarily mean a "final" diagnosis.
In Curnow, the claimant began experiencing difficulty with his wrists in December 1992. The claimant consulted a physician on July 6, 1993, reporting his problem as "carpal tunnel," and indicating it was work-related. The physician prescribed medication and arranged for further testing. Curnow, 899 P.2d at 876. Upholding the hearing examiner's conclusion that claimant's report of injury in September 1993 was untimely, we stated: "We are satisfied [the claimant] knew he had suffered a compensable injury at least on July 6, 1993, after his visit with the orthopedic physician." Id. at 878. Thus, under the totality of the facts in Curnow, the need for further testing did not preclude a finding that the claimant had knowledge sufficient to trigger the statutory reporting requirements.
Here, Zielinske began to suspect that her condition may be related to her work as early as June 1993. In June 1994, Zielinske made an appointment, brought a list of the cleaning materials used in her work, and informed Dr. Schumann she believed her problem may be work-related. She was given work restrictions to which her employer fully acquiesced. Subsequently, on June 27, 1994, Dr. Merchant informed her that, while not confirmed, it was likely the chemicals she was working with were acting as respiratory irritants and exacerbating her asthma. Zielinske then proceeded with a treatment specifically designed to establish the connection between her work and her injury. This undisputed evidence is sufficient to support the hearing examiner's conclusion that Zielinske had knowledge, on June 27, 1994, that her respiratory problems were a condition which could result in, or was likely to cause, a compensable injury.
In an alternative argument, Zielinske alleges that the time in which she was required to report her injury to the Division was tolled when the School District failed to file its own injury report after receiving her doctor's work restrictions on June 7, 1994. This issue was not raised below or in Zielinske's initial brief on appeal. Because this is not a jurisdictional or fundamental matter, we decline to consider it at this time. Vigil v. Ruettgers, 887 P.2d 521, 526 (Wyo.1994).
Zielinske next contends that, even if her report was not timely, there is no evidence which establishes prejudice to her employer or the Division. Initially, we note that neither the employer nor the Division were required to show prejudice. The legislature squarely placed the burden on the claimant to show by clear and convincing evidence that no prejudice occurred. In any event, despite the School District's attempt to comply with the work restrictions imposed by Dr. Schumann, the hearing examiner found that Zielinske gave the School District *711 no warning of her voluntary re-exposure to the restricted products, or the existence of alternatives to such re-exposure. In addition, Zielinske did not notify her supervisors of the purpose of her daily peak flow monitoring activities, and therefore afforded them no opportunity to ensure the reliability of that data. The Division also presented testimony which established that medically trained personnel routinely review the medical treatment provided to a claimant, but in this case the opportunity to review or monitor the treatment was prevented by Zielinske's actions.
We agree with the hearing examiner's conclusion that "in this case, there is no evidence put forth by the Claimant to show a lack of prejudice to either the school district or the Division." Thus, the hearing examiner did not err in concluding that Zielinske failed to rebut the statutory presumption that her claim should be denied.

V. CONCLUSION
Zielinske's decision to commence medical treatment designed to verify the connection between her illness and her job is a sufficient factual basis to support the hearing examiner's conclusion that Zielinske was required to report her injury within ten days after June 27, 1994. Similarly, the hearing examiner did not err in finding that Zielinske's delay in reporting prevented the review or monitoring of her re-exposure to previously restricted chemicals. The order denying benefits is affirmed.