In the Matter of the WORKER'S COMPENSATION CLAIM OF Virgil L. PAYNE, an Employee of Frontier Refining, Inc.:

Virgil L. Payne, Appellant (Petitioner),

v.

Frontier Refining, Inc., Appellee (Respondent).

No. 98–196.

Supreme Court of Wyoming.

Dec. 29, 1999.

Representing Appellant: Daniel E. White of Daniel E. White, P.C., Cheyenne, WY. Argument by Mr. White.

Representing Appellee: Alexander K. Davison and Peter C. Nicolaysen of Patton & Davison, Cheyenne, WY. Argument by Mr. Nicolaysen.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

After undergoing carpal tunnel syndrome release surgery, appellant Virgil Payne (Payne) sought worker's compensation benefits. A hearing examiner from the Office of Administrative Hearings denied benefits, finding that Payne's injury report was untimely and that Payne failed to rebut the presumption that his claim be denied pursuant to Wyo. Stat. Ann. § 27–14–502(c) (Michie June 1991 Rpl.). Specifically, the hearing examiner found that Payne had failed to establish a lack of prejudice to his employer in monitoring medical treatment. Because we conclude that the hearing examiner's finding is not supported by the record, we reverse.

## ISSUES

The injured worker, Virgil Payne, presents two issues for review:

1. Does W.S. § 27–14–502(c) require a worker's compensation claimant to rebut a factual defense relating to the employer's ability to monitor medical treatment which was: (1) not raised by the pleadings; (2) not litigated in the contested case proceedings conducted below; and (3) raised for the first time *sua sponte* by the Office of Administrative Hearings in its order denying benefits.

2. Does W.S. § 27–14–502(c) require the Appellant to rebut Appellee's defense that it was prejudiced in its ability to monitor medical treatment due to the Appellant's failure to comply with an accident investigation and reporting policy where: (1) the Appellee's human resources manager testified that the policy did not apply to the type of injury which had been sustained by the Appellant; and (2) all of the medial treatment of the Appellant's carpal tunnel syndrome occurred after Appellee had been formally notified of the injury.

Payne's employer, the appellee Frontier Refining, Inc., restates the issues:

1. Whether substantial evidence exists to support a finding that the claimant did not timely report the injury.

2. Whether substantial evidence exists to support the denial of benefits based upon the claimant's failure to show by clear and convincing evidence that the employer's ability to monitor the claimant's medical treatment was not prejudiced.

### FACTS

Virgil Payne began working for Frontier Refinery, Inc., (Frontier) in 1969. Since 1985, he has worked as a pump mechanic. Sometime in between approximately 1992 and 1994, Payne began experiencing pain and numbness in his hands and wrists, and loss of sensation in his fingers.

On May 3, 1995, during a routine medical exam of old head and back injuries, Payne complained of pain and numbness in his hands and of some stiffness in his right elbow. Payne's physician determined Payne "probably has carpal tunnel," and advised Payne of that. However, the physician's report indicates they "elected ... to put off any kind of a workup for now."

On November 24, 1995, Payne again met with his physician. After performing nerve conduction testing, the physician confirmed the diagnosis of carpal tunnel syndrome (CTS). The physician's report indicates that Payne's CTS is "most likely related to work." Payne testified the CTS diagnosis was communicated to him on that date, but the physician did not tell Payne that the condition might be work related. On November 29, 1995, Payne's physician referred Payne to a surgeon, recommending Payne be given "strong consideration for surgical intervention."

On December 19, 1995, Payne told Frontier's Human Resources Manager that he planned to undergo surgery for his CTS. Payne also mentioned that he might file a worker's compensation claim, to which the manager responded that Frontier would contest the claim. Pursuant to Frontier's elective surgery policy, Payne provided written notice to Frontier the next day, December 20, 1995, that surgery on his right wrist was planned. Payne completed a worker's compensation injury report on February 8, 1996, which was filed with the Clerk of the District Court on February 20, 1996.

On April 9, 1996, Payne underwent CTS release surgery on his right wrist. Payne submitted worker's compensation claims for the cost of surgery, medical treatment, and for temporary total disability. In its Final Determination, the Wyoming Worker's Compensation Division (Division) approved Payne's claim for benefits. Frontier objected, however, arguing that Payne's CTS was not work related.

The matter was referred to the Office of Administrative Hearings. Prior to the hearing, Frontier filed a case disclosure statement in which it raised the issue that Payne should be denied benefits because he failed to report the injury in a timely fashion. At the hearing, the evidence focused on two issues: (1) whether Payne's injury was work related, and (2) the timeliness of Payne's report of the injury.

The hearing examiner denied benefits, finding Payne's report of the injury was untimely and Payne failed to rebut the presumption that his claim be denied pursuant to Wyo. Stat. Ann. § 27–14–502(c). Specifically, the hearing examiner found "[t]here does not exist in this case clear and convincing evidence that there was a lack of prejudice to Frontier in monitoring Claimant's medical treatment." Because the hearing examiner decided the case on the injury report issue, it did not reach the issue of whether Payne had established his CTS was work related or whether Payne had established the requirements for an injury occurring over a substantial period of time. Wyo. Stat. Ann. § 27–14–603(a).

Payne petitioned for review with the district court, which affirmed the hearing examiner's denial of benefits. This timely appeal follows.

### STANDARD OF REVIEW

The dispositive issue in this case is whether Payne rebutted the presumption

that his claim be denied as a result of a tardy injury report. Wyo. Stat. Ann. § 27–14–502(c). The presumption of claim denial may be rebutted if the claimant establishes by clear and convincing evidence a lack of prejudice to the employer or the Division in investigating the accident and in monitoring medical treatment. Neither the employer nor the Division are required to show prejudice. *Matter of Zielinske,* 959 P.2d 706, 710 (Wyo. 1998). Instead, the claimant has the burden to establish a lack of prejudice as a result of the untimely injury report. *Id.* This determination is a question of fact. *Id.* at 709 (citing *Curnow v. State ex rel. Workers' Compensation Div.,* 899 P.2d 875, 878 (Wyo. 1995)).

■ When, as in this case, a hearing examiner decides that a party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" standard of Wyo. Stat. Ann. § 16–3–114(c)(ii)(A) (Lexis 1999). *Bando v. Clure Bros. Furniture,* 980 P.2d 323, 331 (Wyo.1999); *Nissen v. Cheyenne Frontier Days,* 983 P.2d 722, 724 (Wyo.1999); *Pederson v. State ex rel. Workers' Compensation Div.,* 939 P.2d 740, 742 (Wyo.1997); *Bohren v. State ex rel. Worker's Compensation Div.,* 883 P.2d 355, 357–58 (Wyo.1994). The hearing examiner, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Bando v. Clure Bros. Furniture,* 980 P.2d at 331 (citing *Pederson,* 939 P.2d at 742). A hearing examiner's findings of fact are accorded deference, and the hearing examiner's decision will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Id.* Demonstrating evidentiary contradictions in the record does not establish the ruling was irrational, but we do examine conflicting evidence to determine if the agency reasonably could have made its finding and order based upon all of the evidence before it. *Id.*

### DISCUSSION

■ An employee's claim for worker's compensation benefits is governed by the law in effect when the injury occurred. *Clark v.*

*State ex rel. Workers' Safety and Compensation Div.,* 968 P.2d 436, 438 (Wyo.1998); *State ex rel. Workers' Compensation Division v. Jacobs,* 924 P.2d 982, 984 (Wyo.1996). Wyo. Stat. Ann. § 27–14–502, which was amended in 1996, controls the employee's duty to file an injury report. Because Payne was injured prior to the effective date of the 1996 amendment, the earlier version of the statute, Wyo. Stat. Ann. § 27–14–502 (Michie June 1991 Rpl.), applies to his claim. That statute provides in relevant part:

(a) As soon as is practical but not later than seventy-two (72) hours after the general nature of the injury became apparent, an injured employee shall report the occurrence and general nature of the accident to the employer and within ten (10) days after the injury became apparent, file the report in the office of the clerk of court of the county in which the accident occurred. . . .

. . .

(c) Failure of the injured employee . . . to report the accident to the employer and to file the report with the clerk of court in accordance with subsection (a) of this section is a presumption that the claim shall be denied. The presumption may be rebutted if the employee establishes by clear and convincing evidence a lack of prejudice to the employer or division in investigating the accident and in monitoring medical treatment.

■ It is clear the reporting requirements of Wyo. Stat. Ann. § 27–14–502 apply to Payne's claim. In accordance with Wyo. Stat. Ann. § 27–14–603(a) (Lexis 1999), Payne sought to establish an injury that occurred over a substantial period of time. Although the injury report statute (Wyo.Stat. Ann. § 27–14–502) does not include a provision for injuries which occur over a period of time as does the statute of limitations (Wyo. Stat.Ann. § 27–14–503(b)), we have held that "even in the case of an injury which occurs over a period of time, the reporting requirements of Wyo. Stat. § 27–14–502 are as important as the filing requirements of Wyo. Stat. § 27–14–503, perhaps more so." *Neal v. Caballo Rojo, Inc.,* 899 P.2d 56, 61 (Wyo. 1995).

Before discussing prejudice in monitoring Payne's injury, there are two other matters necessary to assist in our discussion of prejudice to the employer. First, we recite the hearing examiner's findings on the timeliness of Payne's injury report:

13. Claimant did not inform Frontier of his claim that his CTS was work-related until February 8 or 9, 1996 and did not file his injury report until February 20, 1996.

14. Whether Claimant became aware, or should have become aware, that his CTS was work-related on May 3, 1995, or November 24, 1995, or sometime in between, and whether he notified his employer of his claim that his CTS was work-related on December 19, 1995, or February 8, 1996, he failed to meet the two reporting requirements found in Wyo. Stat. § 27–14–502(a) (1986).

Second, because the hearing examiner found that Frontier had not been prejudiced in investigating Payne's CTS, we are only dealing with prejudice in monitoring Payne's medical treatment.

We turn then to the hearing examiner's finding that Payne failed to establish by clear and convincing evidence that there was a lack of prejudice to Frontier in monitoring his medical treatment. The hearing examiner found:

18. Employer had in place a policy of requiring the reporting of any accident, injury, or "near miss" within 24 hours. The purpose of this policy was to facilitate the investigation and discovery of the causes of on-the-job injuries and to prevent their recurrence.

19. In addition, the contract under which Claimant worked contained a provision establishing a joint Labor–Management Health and Safety Committee. The purpose of this committee was, among other things, to consider, investigate, and review health and safety conditions and practices. The committee also had the authority to hire independent industrial health consultants to survey health hazards in the workplace. The Employer agreed to pay for any physical and medical tests found necessary in light of the findings of the industrial health consultants.

20. By failing to timely report his CTS, the Claimant frustrated Frontier's ability to monitor his medical treatment through the use of industrial health consultants or other medical personnel. The Employer was deprived of the ability to employ "conservative treatment" options short of surgery, such as rest periods, hand exercises on the job, job modification, proper ergonomics during job performances, or even wrist splints. All of these treatments are recommended as treatment alternatives by at least some health care professionals and could have been implemented by Frontier in this case.

■ Frontier argues that the case of *Curnow v. State ex rel. Workers' Compensation Div.*, 899 P.2d 875 (Wyo.1995), is controlling. As in the present case, Curnow suffered from CTS and failed to file a timely injury report. In addition, the hearing examiner in *Curnow* found that the claimant had failed to establish a lack of prejudice in monitoring medical treatment. On that issue, we wrote:

The hearing examiner found Curnow had not established by clear and convincing evidence a lack of prejudice to the employer or the Division in monitoring medical treatment. The Division, through the assistant human resources manager at WOTCO, established WOTCO had a policy of requiring the report of any accident or injury during the shift in which it occurred. It was WOTCO's policy to follow up by investigating accidents or causes of difficulty. A part of the job of the assistant human resources manager was to determine what the problem was and work with an employee and a doctor to find out what could be done to lessen the problem. WOTCO also had a policy of monitoring health care treatment. In this instance, WOTCO, because of the tardy reporting, was not aware medication was being prescribed. It did not know braces had been prescribed for Curnow, and it had no opportunity to monitor the decision of Curnow not to use braces. The assistant human resources manager testified there were several different styles of braces which potentially would have been useful to Curnow.

It is clear WOTCO had an affirmative policy of monitoring the health care of its employees in situations such as this and assisting in whatever ways were possible to permit an adjustment to the working conditions. That monitoring, obviously, was more proactive than simply knowing what the health care provider was doing. It also extended to affirmative assistance in working with the problem. This information in the record provided substantial evidence before the hearing examiner of prejudice to the employer and to the Division, through the employer, in monitoring Curnow's medical treatment. Curnow offered nothing in the record to counteract this evidence, and we agree with the district court that substantial evidence supports the determination by the hearing examiner that Curnow did not establish "by clear and convincing evidence a lack of prejudice to the employer or division . . . in monitoring medical treatment."

*Curnow*, 899 P.2d at 878.

Although *Curnow* is similar to the present case in several respects, we do not agree that it is controlling. Like the employer in *Curnow*, Frontier had a policy of monitoring employee health care in this type of situation, and Frontier's policy was likewise "more proactive than simply knowing what the health care provider was doing." *Id.* However, the simple fact is that Payne's physician referred him for surgery, and he ultimately had surgery. Payne's physician prescribed neither work restriction nor conservative treatment. In fact, there is no indication that conservative treatment options were discussed at Payne's May or November examinations.[1] In this respect, *Curnow* is clearly distinguishable. There, unknown to the employer, Curnow was prescribed medication and braces but he opted not to wear the braces. The employer was thus prejudiced because "it had no opportunity to monitor the decision of Curnow not to use braces." *Id.* Here, there were no restrictions or conservative treatment that Payne could deviate from, and Frontier could not be prejudiced by its lack of ability to monitor non-existent restrictions or treatment.

The question is thus whether Frontier was prejudiced by being "deprived of the ability to employ 'conservative treatment' options short of surgery." While the record does establish a number of viable treatment options, nothing in the record suggests that conservative treatment would have made a difference, i.e., that surgery, which was the only treatment suggested by Payne's physician, would have been avoided if conservative treatments were employed in the brief interim between Payne learning of the injury and making the injury report. In addition, Payne established that, after his report of the injury, Frontier never offered either light duty employment, job modification, or any other form of conservative treatment. The record is void of any evidence suggesting that Frontier employed job modifications or conservative treatments when it had the opportunity. In any event, nothing in the Worker's Compensation Act gives the employer the power to dictate medical treatment. While the act does provide for an independent medical examination in a contested case, Wyo. Stat. Ann. § 27–14–604 (Lexis 1999), the injury report statute limits the employer to investigating the accident and monitoring medical treatment.

Frontier also directs us to the case of *Matter of Zielinske*, 959 P.2d 706 (Wyo. 1998), for the proposition that an employee who continues to re-expose himself to the harmful work condition prejudices the employer. In that case, Zielinske suffered various breathing problems as a result of her exposure to cleaning chemicals at work. 959 P.2d at 708. Zielinske informed the employer that, pursuant to doctor's orders, she was to avoid working with certain chemicals, and the employer agreed to comply with the doctor's recommendations. *Id.* Unbeknownst to the employer, however, Zielinske's medical treatment also dictated that she re-expose herself to restricted cleaning products to verify the cause of her breathing problems. In addition, Zielinske monitored her breathing

---

1. The only attempt at conservative treatment occurred when Payne's surgeon prescribed wrist splints in March of 1996; however, this was *after* Payne filed an injury report.

four times a day. *Id.* The pertinent discussion from *Zielinske* provides:

> [D]espite the School District's attempt to comply with the work restrictions imposed by Dr. Schumann, the hearing examiner found that Zielinske gave the School District no warning of her voluntary re-exposure to the restricted products, or the existence of alternatives to such re-exposure. In addition, Zielinske did not notify her supervisors of the purpose of her daily peak flow monitoring activities, and therefore afforded them no opportunity to ensure the reliability of that data. The Division also presented testimony which established that medically trained personnel routinely review the medical treatment provided to a claimant, but in this case the opportunity to review or monitor the treatment was prevented by Zielinske's actions.

959 P.2d at 710–11.

We do not read *Zielinske* for the broad proposition for which Frontier cites it. There, the employer was aware of a portion of Zielinske's medical treatment—she was to avoid exposure to certain chemicals. However, the employer was not aware that Zielinske was re-exposing herself to restricted chemicals and monitoring her breathing as part of her treatment. Therefore, the prejudice to the employer arose from lack of knowledge of these portions of Zielinske's medical treatment. Contrary to Frontier's argument, the prejudice in *Zielinske* did not arise simply from re-exposure to the work environment.

Finally, there is another reason why we cannot accept the argument that, by continuing to work, Payne prejudiced the employer. We long ago recognized that a putative injured worker should not be penalized for continuing in good faith to perform his craft. In the case of *Baldwin v. Scullion,* 50 Wyo. 508, 530, 62 P.2d 531, 539 (1936), we wrote the following, which has been upheld by this court on many occasions.

> Medical science and diagnosis have advanced with well-nigh miraculous strides in the last decade or two, yet they cannot at this time, and probably never will be able to, foretell accurately the reaction of every particular human body to every particular hurt it may sustain in industrial employment. *Under these circumstances, it seems to us palpably unjust to the employee to deny him compensation because he has tried to keep his place on the employer's pay roll by doing his regular work* and then has found that conditions produced at the time of the accident, and which medical science could not recognize or whose final consequences it could not forecast, have gradually and ultimately produced a compensable injury.

(Emphasis supplied.) We find this language equally applicable in this case.

### CONCLUSION

The overwhelming evidence in this case establishes that Payne was referred for surgery and that he underwent surgery. Because there was neither treatment in the interim nor any evidence that alternative treatment would have prevented surgery, Payne's employer could not be prejudiced by the untimely injury report. Therefore, after reviewing the entire record in this case, we conclude that the hearing examiner's finding on the issue of prejudice in monitoring medical treatment is clearly contrary to the weight of the evidence. The order denying benefits is reversed, and this case is remanded to the Office of Administrative Hearings for a determination of whether Payne established that his CTS is compensable under the requirements of Wyo. Stat. Ann. § 27–14–603(a). This being our decision, we need not address Payne's contention that the hearing examiner's use of the labor agreement was improper.